GEORGE R. HINES, *et. al.*, v. THE CITY OF LEAVENWORTH, *et al.*

*Error from Leavenworth County.*

Where assessments were made for macadamizing streets in the city of Leavenworth, under ordinance of June 24th, 1863, pursuant to a contract to receive pay according to the ordinance, and where these assessments were thrown up and new and different ones made, with contractor's consent, in March 1864, pursuant to an amendment of the city charter of Feb. 1864, and where, under a new ordinance thereunder of March 9th, 1864, a special tax was levied to pay for such improvements, on writ of error from a decision of the District Court, refusing an injunction in favor of the owners of lots taxed, to restrain the sale of such lots for such taxes, it was *held* that it was competent for the contractors to receive their pay in any other manner than that prescribed by ordinance under which their contract was made, they taking the chances of its legality; they had a right to agree to a change made by the city in the manner of payment; *Held* that when the old assessments were thrown up the case stood as though they had not been made.

*Held* that the amendments to the charter changing the mode of assessments providing (sec. 12,) that the provisions of this act so far as applicable, "shall apply to and regulate and control the levying and collection of special taxes for improvements *now being made*," were intended to apply to all improvements in progress at the time of its passage, and, where the new method is adopted by the contracting parties, *held* that it does apply.

The ordinance of March 9th, 1864, providing for levying the cost of street improvements on the adjacent lots, according to area, *held* not to be in conflict with sec. 1 of art. 11 of the State Constitution, which provides that "the legislature shall provide for a uniform and equal rate of *assessment* and taxation."

The meaning of this constitutional provision, is, that if the state levies the tax, the rate must be equal and uniform throughout the state, and if the county, they must be equal and uniform throughout the county, and so of the township, city or village.

Article 11 relates to finance and taxation; provides for general revenue; prohibits favoritism, and relates to *taxes* as contradistinguished from "*assess-*

*ments* '' as technically used. This article does not confer the *power* of taxation; merely regulates its exercise. The word "assessment" used therein *construed* in its common acceptation, of the listing and valuing of the whole property to be taxed.

The constitution requires, though it does not in terms provide, that the property in the state shall be taxed according to its value; taxes cannot be levied by an equal and uniform rate, except upon value.

Article 12 of the constitution treats of corporations; was intended (not to confer the power to create, but) to regulate the exercise of the general legislative power conferred in the general grant of power. The word "assessment" used therein, *construed* in its technical sense of charge upon adjacent property for improvements.

The power of "assessment" technically understood, is, and could be, conferred upon municipal corporations alone, and only with reference to them is it a rightful subject of legislation; it is not conferred on the state, counties or townships.

Unless the language employed makes it imperative, a clause in an article of a constitution concerning a totally different subject, should not be construed as an attempt to accomplish the same result, reached in another article specially devoted to that subject.

Under the general grant of power, the legislature may authorize charges upon adjacent property for improvements of streets, &c., in a city, and is not bound (by sec. 1, art. 11) to require that such charges be equal and uniform all over such city.

Every law upon the subject of street improvements in cities, must, under sec. 5, art. 12 of the constitution, contain restrictions, as to prevent abuses.

The courts may determine whether such law contains restrictions, but as to *what* restrictions are essential and proper under that section, is a subject wholly under the control of the political departments of the government—not of the judicial.

The amendments of the charter of Leavenworth of Feb. 1864, relating to the improvements of streets, contain such "restrictions," viz: in assessing the costs upon the *adjacent* property, in limiting it to the middle of the block, in the manner of the levy and in the proportion.

The facts of the case are as follows:

The plaintiffs in error (plaintiffs below,) were the owners of a number of lots situated on Shawnee and Main Streets, Leavenworth. June 24th, 1863, an ordinance* was passed providing regulations for improving streets

*This ordinance was involved in City of Leavenworth *v.* Edwin M. Rankin, (2 Kans. R., p. 357)

and the levying and collection of special taxes for the same. Section 3 provides, "for the purpose of making such improvements, a special tax shall be levied and collected upon the adjacent real estate extending to the center of the block on either side of said improvements."

Section 4 provides for the appointment of appraisers "to view and appraise the property liable to taxation for the improvements aforesaid, and to make report in writing under their hands to the mayor and council, designating therein each lot or piece of land appraised, and the value thereof placed upon each."

Section 8 provides that the engineer shall make " an estimate of the aggregate cost and expense of the proposed improvements, and assess the same upon each lot or piece of ground subject to taxation for such improvements, in proportion to the value of said lots or pieces of ground respectively, as fixed by the appraisement."

Section 9. When the contractor shall have completed the work according to the terms of the contract, he shall be entitled to receive a certificate from the city engineer to that effect, which certificate shall be filed with the city clerk, who shall thereafter issue separate certificates referring to the certificate of the city engineer, and stating the amount assessed on each lot or piece of ground; the owner's name if known, and that the amount assessed upon each lot or piece of ground, is due and owing to the contractors, which certificate shall be the contractor's warrant for the collection of said tax. * * *

The remainder of this and the following sections provide for the sale of lots for the payment of the cost of improvements under these certificates by the treasurer of the city.

On the 30th of July, Ellithorpe, Adams and Steel, contracted for the macadamizing of Shawnee and Main streets, in the agreement for which, it was stipulated "that the said parties of the first part shall receive their pay for said work by special tax to be levied and collected upon the

adjacent real estate in accordance with the provisions of an ordinance of said city of Leavenworth," * * * approved the 24th day of June, A. D. 1863, and that the said city of Leavenworth shall in no event be liable under this contract for work done or materials furnished except so much thereof as shall be proportionately chargeable or belonging to said city."

In Feb. 1864, the city engineer, under the provisions of the ordinance above mentioned, accepted the work in front of plaintiff's lots, a part only of the work covered by the contract, and proceeded to assess the aggregate expense and cost of the improvement, upon the lots according to their value. The city clerk then issued to the contractors a certificate of the amount assessed upon each lot. These certificates the contractors received.

Subsequent to these transactions, and while the work was in progress, the legislature passed an act entitled "An act to amend an act entitled an act to incorporate cities of the state of Kansas," approved March 4th, 1863. By this amendatory act, several methods of levying taxes for the improvement of streets were prescribed; and among others, a levy according to the area of the abutting property; and, section 12 provides: "The provisions of this act, so far as they are applicable, shall apply to, and regulate and control the levying and collection of special taxes for improvements now being made." * * *

On the trial of the case below, it was shown that the certificates first issued to the contractors, were by them returned to the city before May 5th, 1864, as unpaid.

March 9th, 1864, another ordinance was passed pursuant to the amended charter, providing a special tax, and its amount, and that it " is hereby levied on all the lots and pieces of ground adjacent " to the said streets, " on either side thereof, and extending back from said streets to the center of the block," which said special tax " is hereby levied on said lots and pieces of ground according to their area."

The city engineer made another assessment of the cost of the work according to the area of the lots. Another set of certificates were then issued according to this last assessment. These certificates were not paid, and the city treasurer advertised, and was about to sell these lots. The plaintiffs asked an injunction, which the court below refused. The plaintiffs below bring the case to this court for review on a bill of exceptions.

*W. P. Gambell* and *S. A. Stinson*, argued the case for plaintiffs in error.

*S. S. Ludlum*, *L. B. Wheat* and *H. Griswold*, for defendants in error.

*Gambell and Stinson*, for plaintiffs, submitted:

I. The contract in question was made under, and incorporated in it the ordinances passed under the act approved March 4th, 1862. The law of 1864, was not applicable to these improvements.

*a.* The city and contractors are estopped from denying that the work was completed, so far as it affects the property of plaintiffs, before the law of 1864. The work was accepted, assessments were made upon the property according to *value*, and certificates issued according to law, and delivered to the contractors. The tax then was *levied*. No one could be bound to accept the provisions of the act of 1864.

*b.* The contract relieves the city from all liability under the same, except with municipal property. *Sec.* 11, *Act of* 1864.

Property holders are alone interested in the matter of assessments and alone can raise the question of irregularity. *Nash* v. *St. Paul*, 8 *Minn. R.*, 184 ; *City of Leavenworth* v. *Rankin*, 2 *Kans. R.*, 357.

II. The law of 1864, (p. 117,) so far as it relates to this contract is unconstitutional.

*a.* It does not contain the restriction required by sec. 5, art. 12 of the constitution. In the general grant of power to the legislature, is the taxing power. Art. 11, sec. 1 provides that "the legislature shall provide for a uniform and equal rate of assessment and taxation." This is a special provision regulating the general grant of power, and is similar to the constitutions of Ohio, Wisconsin, Arkansas and other states. The effect is to place the taxing power in this respect under the control of the judiciary. *Sedg. Stat. Constr.*

The people intended by sec. 5, art. 12, to restrict the powers of the legislature so as to guard against an arbitrary exercise of power of "assessment and taxation." *See Smith's Com. on Const. L.*, secs. 274 *to* 294, 295, 8, 319, 24; *Black. on Tax Titles, pp.* 1, 4, 10 ; *Malloy* v. *City of Marietta,* 11 *Ohio St.,* 636 ; *Lumsden* v. *Cross,* 10 *Wis.,* 282.

III. On similar provisions to sec. 1, art. 11 of the constitution, it has been determined that it was intended thereby to impose limitations and restrictions upon the general taxing power. The use of the word "assessment" in addition to "taxation," shows that it was intended to provide for an assessment for local improvements, different from the taxation for general purposes. The following were cited: *Hill* v. *Higdon,* 5 *Ohio,* 243 ; 4 *Comst.,* 419 ; *Malloy* v. *City of Marietta,* 11 *Ohio,* 636 ; *Lumsden* v. *Cross,* 10 *Wis.,* 282 ; *Weeks* v. *City of Milwaukee,* 10 *Wis.,* 242 ; *Reeves* v. *Treasurer Wood Co.,* 8 *Ohio,* 333.

Thus stood the law when the constitution was adopted. That of Ohio was the model.

Whether as "assessments" or "taxes," the impositions are not uniform—they could not be levied by *area.*

*S. S. Ludlum, H. Griswold, Clough & Wheat,* for defendants in error, submitted a brief making the following points applicable to those decided :

The assessments were regulated by the provisions of the act of 1864, (March 7th). It is not an inordinary thing

for legislative authority to change the method of collecting taxes, and after levies and assessments. *Bennett* v. *City of Buffalo*, 17 *N. Y.* 383 ; *Black. Tax Title*, (2*d ed.*) 163 ; *Amend. Char., March. 7th*, 1864, (174).

The plaintiffs are not, and cannot claim the rights of parties to the contract. (19 *N. Y.*, 116). They acquired no rights by reason of the first assessment. *Id.*

The mode of ascertaining the valuation, was not correct. *Sec.* 1, *Art.* 2, *Charter.*

The value of lots was made without regard to improvements. *Id., Comp. L., p.* 838 ; *sec.* 1, *Ch.*, 188, *Subd.* 8.

The council was the only power to make the assessments. It could not delegate the power.

The proceedings are presumed to be legal. *McHuley* v. *City of Chicago*, 22 *Ills.*, 563.

In the case below there is a general finding for defendants, the case having been tried by the court without a jury. In absence of a special finding of facts and of law, the Supreme Court cannot look into the evidence. *Major* v. *Major*, 2 *Kans. R.*, 337.

The bill of exceptions does not purport to contain all the evidence ; this court must presume that it was sufficient to uphold the decision. *Major* v. *Major*, 2 *Kans.* 337 ; *Ward* v. *Centre*, 3 *John.*, 271 ; *Flemming* v. *Hollenback*, 7 *Barb.*, 271 ; *Cohen* v. *Dupont*, 1 *Sandf.*, 260 ; 6 *Ohio*, 497 ; 9 *Id.*, 443.

The law under which the assessments were made is constitutional. See *Ord., March 7th and June 24th*, 1864 ; *Sec.* 3, *Act of Feb.* 24*th*, 1864 ; *Secs.* 4, 5, 6, 7, 8, 9, 10 *and* 11 *of Amend. Charter.*

The legislature had full power to confer the power to grade streets and to assess the expense upon adjacent property upon the city. 1 *Ohio S.*, 127 ; 5 *Id.*, 228, 243, 521 ; 8 *Id.*, 338 ; 9 *Id.*, 540 ; 10 *Id.*, 162 ; 11 *Id.*, 638 ; 19 *Ohio R.*, 418 ; 2 *Mich.*, 560 ; 14 *U. S. D.*, 135, *sec.* 254 ; 4 *Comst.*, 420 ; 6 *Humph.*, 371 ; 1 *Handy*, 464 ; *Sedg. Const. Constr.*, 501 ; 10 *Wis.*, 242, 282.

The amended charter of Feb. 24th, 1864, does not conflict with sec. 5, art. 12 of the constitution. This is similar to sec. 9, art. 8 of the constitution of New York. Both make a distinction between "taxation" for general purposes and " assessments "—the word taxation having a meaning that would not include assessments for improvements. The failure of the legislature to limit the assessments in amount, affords no argument against the amended charter. The city council control the local improvements. They, and not the courts, have jurisdiction to determine the amount of assessments. *The People, ex rel. Griffin*, v. *The Mayor, &c., of Brooklyn*, 4 *Comst.*, 419; *Williams* v. *Mayor of Detroit*, 2 *Mich.*, 560.

The plaintiffs were not parties to the contract and cannot complain of impairing of obligations. 19 *N. Y.*, 116; 2 *Black.*, 513.

The change in the manner of assessment did not affect the obligations of the contract, nor any other vested right. 19 *N. Y.*, 116; 3 *Kern*, 147.

Section 5, art. 12 of the constitution, is directory, merely. In failing to prescribe limits, when power to make assessments was conferred upon the city council, the legislature acted within the scope of its authority. 5 *Ohio S.*, 243, 248; 10 *Wis.*, 282, *and cases*; 11 *Ohio S.*, 638.

The restriction imposed upon the city was upon the *objects* of assessments.

"Assessment" has different meanings. In sec. 1, art. 11 of the constitution, it means valuation of property by the assessors for purposes of general taxation, and is contradistinguished from special assessments for improvements. *Williams* v. *Mayor Detroit*, 2 *Mich.*, 565; *Reeves* v. *Tr. Wood Co.*, 8 *Ohio S.*, 337; *Hill* v. *Higdon*, 5 *Id.*, 249; *Lumsden* v. *Cross*, 10 *Wis.*, 282; 26 *Ills.*, 351; *Bagg* v. *City Detroit*, 5 *Mich.*, 344; *Sears* v. *Cottrell*, 5 *Id.*, 251.

That assessments for city improvements are not *taxes*, see *City of Peoria* v. *Kidder*, 26 *Ills.*, 351.

25

Constitutional provisions in this respect are not grants but limitations of power. *Sears* v. *Cottrell*, 5 *Mich.*, 257; *Burgiss* v. *Wilson*, 15 *Ills.*, 392; *Bushrel* v. *Beloit*, 10 *Wis.*, 195; *Town of Gilford* v. *Supervisors*, 3 *Kern*, 145; 6 *Cranch*, 87, 88; 3 *Wash. C. C.*, 313; 15 *Wend.*, 133.

The amendment to the charter applied to the work in progress at its passage. *Sec.* 12; 3 *Kern*, 143; 19 *N. Y.*, 116; 5 *Gill.*, 405; 24 *Wend.*, 65.

That assessments made by front foot or area are legal, *see* 10 *Ohio S.*, 162; 5 *Id.*, 522-3; 10 *Wis.*, 282; 24 *Howard*, 159.

That the *three* ways of assessing are not objectionable, *see* 10 *Ohio S.*, 163, 165.

That sec. 1, art. 2 of the constitution requires all taxes to which it is applicable, to be levied upon all the taxable property within the limits of the municipality, *see Gilman* v; *City Sheboygan*, 2 *Black.*, 510, *and cases.*

If that section of the constitution is applicable to the special taxes or assessments in controversy, it follows that the legislature of our state can authorize no municipality to improve without taxing the whole state.

That laws under which assessments are made, may be passed after the work is done, *see Scoville* v. *City of Cleveland*, 1 *Ohio S.*, 133; *Butler* v. *City of Toledo*, 5 *Id.*, 225; *Foster* v. *Com'rs Wood Co.*, 9 *Id.*, 540; *Shaw* v. *Dennis*, 5 *Gil.*, 405; *Thomas* v. *Leland*, 24 *Wend.*, 65; *Town of Gilford* v. *Supervisors*, 3 *Kern*, 143; *Brewster* v. *City of Syracuse*, 19 *N. Y.*, 116.

The want of restriction, further than is contained in the charter, does not make the act void. *Hill* v. *Higdon*, 5 *Ohio S.*, 248; *Malloy* v. *City Marietta*, 11 *Id.*, 638; *Lumsdon* v. *Cross*, 10 *Wis.*, 288-9, 262.

The act being constitutional and the proceeding under it regular and within the jurisdiction of the council, the courts have no jurisdiction to afford the relief demanded. *Meserole* v. *Mayor of Brooklyn*, 8 *Paige R.*, 198; 1 *Eq.*

*Dig.*, 154; 1 *Paige*, 548-9; *Vandorn* v. *Mayor of N. Y.*, 9 *Paige*, 338; 1 *Eq. Dig.*, 162-9; *McBride* v. *City of Chicago*, 22 *Ills.*, 574.

A law is presumed constitutional, and as to the strength of this presumption: *Foster* v. *Era Bank*, 16 *Mass.*, 245; *Fletcher* v. *Peck*, 6 *Cranch*, 87; *Lane* v. *Danner*, 3 *Scam.*, 2; *Morris* v. *The People*, 3 *Den.*, 381; *Newell* v. *The People*, 3 *Seld.*, 107; *Green* v. *Evons*, 1 *Doug.*, *Mich.*, 352; *Sears* v. *Cottrell*, 5 *Id.*, 251.

This action is in the nature of a suit in chancery, and the complainants must show errors affirmatively. *Williams* v. *Mayor Detroit*, 2 *Mich.*, 573.

*By the Court*, CROZIER, C. J.

Counsel for plaintiffs in error have chosen to rest their case upon the following propositions:

1st.   The law under which the assessment was made, was not applicable to the case.

2d.   The law is unconstitutional in that the rate of assessment authorized, is not equal and uniform.

3d.   The law is unconstitutional in that it contains no restriction upon the power of assessment and taxation.

The particular ground of the first objection is, that because the assessment upon the property of the plaintiffs for the improvement of the streets adjacent thereto, had already been made according to the law and ordinances then in force, and certificates had been issued before the passage of the amendment of 1864, therefore the latter could not be and was not intended to be applicable. It is not pretended that the contractors had received any compensation for the work done adjacent to the property of the plaintiffs, or that under the new arrangement the plaintiffs would be required to pay twice for the same thing. After so much of the work embraced in the contract, as was adjacent to the property of the plaintiffs, had been completed and certificates issued therefor, the legis-

lature authorized a mode of assessment for such improvements different from that pursued by the city authorities in the first assessments; after which with the assent of the contractors the first certificates were canceled and others issued in accordance with an ordinance passed in pursuance of the new statutory provision. But a portion of the work embraced in the contract has been performed, and for that portion the contractors had no means of enforcing payment, the provisions of the charter having been changed. It is true that they had agreed to receive their pay according to the ordinance which was repealed, but it was competent for them to receive it in any other manner, they taking the chances of its legality, so that so far as they were concerned they had a right to agree to any change in the manner of payment that might be adopted by the city. If the city had the power to make the change that was made in the manner of payment, and the contractors assented to the change, nobody has any ground of complaint.

It is not very earnestly claimed, however, that the legislature had not the power to authorize a change in the manner of payment, but it is insisted that no change was in fact authorized. The new act does not contemplate any change in the contract so far as it relates to the manner of doing the work, the time within which it should be done, or the amount of compensation to which the contractors should be entitled. Nothing was sought to be effected, except the manner of their compensation, and to that they assented. The work embraced in their contract was not completed. They had received no compensation for what they had done. They assented to the cancelation of their former certificates, and agreed that the city might disregard the assessment under which they were issued. The case stood as if no certificates ever had been issued, and if the provisions of the new act are in their nature applicable to a case where work had been done and

no steps taken to enforce payment, therefore then are they applicable to this case. The legislature intended the law to apply in all cases where improvements were progressing at the time of its enactment; and when the parties to the contract chose to adopt those of its provisions which are in their nature applicable, certainly the law ought to be held to apply.

It is urged as an objection in this case that this law is unconstitutional for the reason that the mode of assessment authorized and adopted, is not "equal and uniform," and the court is referred to art. 11, sec. 1 of the constitution, the material part of which is as follows: "The legislature shall provide for a uniform and equal rate of assessment and taxation." The controversy so far as this point is concerned, turns upon the signification to be attributed to the word "assessment." It is contended by the plaintiffs that it refers to charges upon adjacent property for improving streets, alleys, &c., and has the same signification that it has as used in article 12, sec. 5 of the constitution. It is admitted on all hands that such is its meaning in the clause last referred to, but it does not follow that it must have the same signification in the other clause. Ordinarily such would be the case, but it is not necessarily so. The intention of the law-maker must control, and the intention is to be ascertained from all that is expressed rather than from the technical or general signification of a word. For example: the word "officer" in some of the clauses of the constitution of the United States includes members of the national legislature, while the same word in other clauses does not include them. The general nature of the article or section in which they occur—the connection in which they stand—the probable object to be accomplished, and many other considerations, may and should be looked to to ascertain the meaning of the particular words.

Article 11 of our constitution relates exclusively to

finance and taxation. The title of the article is "Finance and Taxation." Ordinary and extraordinary revenues must be raised in accordance with its provisions. The financial polity of the state must be regulated with reference to its requirements. It authorizes suitable financial arrangements to be made in emergencies and binds the particular organization, whether state or county, to the utmost good faith in the fulfillment of its obligations. It prohibits all favoritism, requiring all to contribute in proportion to their means to the support of the public burdens. Counsel for the plaintiffs do not claim nor would they agree that the language of the title of article 11 includes "assessments," technically so called. Very manifestly, the word "finance" does not include them, and it is agreed that taxes and assessments technically considered, are different things. Did not the word assessment occur in the body of the article, it probably would not be contended that it had any reference to charges upon adjacent property for improvements. Every word in it concerning contributions relates to taxes as contradistinguished from "assessments." But it is contended that because the word "assessment" as used in other constitutions has been held to mean, and as used in the twelfth article of our constitution, admitted to mean charges upon adjacent property for improvements, it must necessarily mean the same thing in the eleventh article; and although such construction may operate to incorporate into the article last referred to, a subject foreign to its general scope and spirit, and one fully treated of in the succeeding article, no other interpretation is allowable. The court entertained a different opinion upon the subject.

Article 12 of the constitution treats of corporations. Its various sections are not grants of power to the legislature, but were intended to regulate with reference to corporations the exercise of the general legislative power conferred by a preceding article. Such was the object of

Article 11 with reference to finance and taxation generally.   Section 5 of article 12 is as follows:

"Provision shall be made by general law for the organization of cities, towns and villages, and their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, shall be so restricted as to prevent the abuse of such power."

This does not nor was it intended to confer upon the legislature power to provide for the creation of municipal corporations, but was intended to regulate the exercise of that power as conferred in the general grant of power.   So of the first section of the eleventh article.   It does not confer the power of taxation.   It merely regulates its exercise.   The power of "assessment" technically understood, naturally belongs to and is exclusively exercised by municipal corporations.   Hence, when provision was being made regulating the exercise of the legislative power to create municipal corporations, this was a proper subject for consideration, and to be included.

This was the right place for it.   The general grant of legislative power does not authorize the legislature to confer upon the state, counties or townships as such, the power to make charges upon adjacent property for improvements. Such power can be rightfully conferred upon municipal corporations alone.   Only with reference to them is it a rightful subject of legislation.   And the constitutional provision in this instance is full, clear and explicit.   It covers the whole ground.   The legislature is expressly required so to restrict, in the exercise of their power, the only organizations upon whom the power to exercise it at all can be conferred, that it may not be abused.   When this requirement is complied with, the legislature can do nothing more, and nothing more is in justice and equity necessary for the protection of the people.

There was then no necessity for further provision against wrong in this direction, and unless the language employed

makes it imperative, a clause in an article concerning a totally different subject should not be construed as an attempt to accomplish the same result. Now unless the word assessment in the eleventh article means something else than charges upon adjacent property for improvements, the framers of the constitution have provided twice in succeeding articles for precisely the same thing,—once in the appropriate place, and again in a very inappropriate place. But the court is of opinion they have not attempted any such thing.

If in construing the eleventh article the word assessment be taken in its common acceptation, and in interpreting the twelfth article in its technical sense as above indicated, all difficulty in construing and harmonizing the two articles will vanish. There being no controversy as to the meaning of the word as used in the twelfth article, let us see if the word as used in the eleventh article was not intended to be understood in a different sense.

It will be observed that the constitution does not in terms require that the property in the state should be taxed according to its value, but it must be apparent to every one that such was the intention of the constitution makers. Taxes cannot be levied by an equal and uniform rate except upon the value. If so much were levied upon each acre, lot, horse, cow, sheep, note, bond, &c., the rate might be uniform, but it would be very unequal. And besides the article authorizes an exemption of the property to the value of two hundred dollars—not that certain specific articles shall be exempt. This much of the property at least, must be valued, and it cannot be supposed that it was intended that the remainder should not be valued, especially when it would be impossible to make the rate equal and uniform without valuing it.

The whole property of the state then must be listed and valued for taxation. Now what in common parlance is this operation called? Everybody would say it is denomi-

nated "assessment." Such is the common acceptation of the word and no one but a professional man would give it any other. The framers of the constitution must have foreseen that different persons would be employed in the different counties to make the assessments, and that they must inevitably differ in their estimates of the value of property. The land, stock, &c., in one county might be estimated at a much higher rate than in another, which for state purposes would produce a corresponding irregularity in the taxation. This would be avoided by requiring the rate of assessment to be equal and uniform. And if they desired to accomplish this what better way of doing it than by saying so.

But it is contended that the word taxation would include assessment as used in this sense. There is no doubt such is held to be the case when the word assessment has been omitted. But where the ellipsis is supplied it does not necessarily follow that the word must necessarily mean something else. And especially would it not follow when such a construction would have the effect of abrogating another provision. The meaning of the first section of article 11 is that the rate of taxes throughout the jurisdiction that levies them must be equal and uniform. If the state levies them the rate must be equal and uniform throughout the state. If the county levies them, then they must be equal and uniform throughout the county, and so of the township, city or village. It does not mean that a man in one county shall pay the same rate of taxation for all purposes that is paid by a man in an adjoining county. Now, the property of a man residing in the city of Leavenworth should bear the same rate of taxation for state purposes that is borne by the property of a man in the remotest county, and for county purposes, the same rate that other men in the county pay, and for city purposes the same rate paid by other men in the city. Each man in the state, county and city, is equally in proportion to his

property interested in maintaining the state, county and city governments, and in that proportion should bear the burdens equally. There is a justice in this arrangement which commends it to the approbation of any right thinking man, but the injustice of assessing the property all over a city for the improvement of a single street must be apparent at a glance. An individual may be the owner of ten or twenty acres of unoccupied land upon which he desires to lay out an addition to a city. In order that it be available or saleable as city property, streets must be cut through it. The improvements may inure solely to the benefit of the owner in the enhanced value of the property. Would it be just that property of another quarter of the city should pay for the improvements? Every reasonable man would say no. A construction of the constitution that would authorize such a proceeding must inevitably operate to suspend all such improvements, and that too although they were contemplated in framing the fifth section of article 12. It manifestly would be a gross " abuse of the power of assessment." Yet it is the construction insisted upon by the plaintiffs. Had it been contended that so far as the improvement went the adjacent property should have been assessed by a uniform and equal rate, there probably would have been no difference of opinion between counsel and the court, except that counsel would probably have predicated their argument upon the first section of article 11, while the court would have relied upon section five of article 12. No reference to the former section is necessary to protect the citizen against unjust assessments, because unequal and irregular assessments would be an abuse of the power, and are provided against by the latter section.

The opinion of the court therefore, upon this branch of the case is, that under the general grant of power the legislature may authorize charges upon adjacent property for improvement of streets and alleys, and is not bound

by the first section of the eleventh article of the constitution to require that such charges shall be equal and uniform all over a city.

It is claimed that the law under which these assessments were made is unconstitutional, for the reason that the power to make them is not so restricted as to prevent the abuse thereof, as required by the fifth section of article 12 above quoted. The provision is imperative, and every law upon the subject must contain such restrictions. But who shall be the judge of the sufficiency of the restrictions? What tribunal shall determine what is an abuse of the power? If this court, as the plaintiffs urge, is to be the judge, by what rule shall it be guided? Upon what basis shall it determine that adjacent property shall pay so much and no more? To illustrate: The same section provides that the power to borrow money and contract debts, shall be so restricted as to prevent the abuse thereof. By what sort of a rule can this court fix the limit for these objects at say twenty thousand dollars or any other amount, and say that to exceed such sum is an abuse of the power? Such a power would be more in consonance with the functions of a board of trade than of a judicial tribunal. The loan of the credit of a city to a railroad company, might under certain circumstances be very judicious or injudicious exercise of the power, yet it is difficult to discover how a court could get before it all the facts necessary to a correct or even an intelligent determination of the question. It must be apparent to every man that any court would be illy qualified to grapple such a subject.

And so in reference to any other subject mentioned in the section under consideration. In the very nature of things no rule could be established which would not work injustice. It is not a subject proper for judicial cognizance but belongs to another tribunal. It would involve the exercise of a discretion that the framers of the constitution

never intended should be deposited in any court.    It would in effect constitute the court a law-maker rather than a law expounder.    When a law is passed embracing any of the subjects mentioned in the fifth section, it is the duty of the court, when called upon, to determine whether it contains restrictions, and if it does contain them the law must be held to be valid, notwithstanding the members of the court might doubt their sufficiency to prevent abuses.    It is a subject wholly under the control of the political departments of the government.    Whatever the legislature determines to be a sufficient restriction, if it be a restriction at all, must be final.

In the statute referred to in the case at bar, it may be that the restrictions are not very stringent, yet it does contain restrictions nevertheless.    The cost of the improvement must be assessed upon the adjacent property; the charge must extend back to the middle of the block; it must be levied in one of three prescribed ways, and in proportion to the cost of the whole improvement.    Were the court sitting as a legislature it might be that these provisions would not satisfy the judgment of any member of it, yet they are nevertheless restrictions.    It is true no limit is fixed to the amount that might be assessed for im-proving a street, and the burthen might fall very heavily on some or all of the property holders affected thereby. But a little reflection will satisfy any thinking mind of the absolute impossibility of intelligently fixing a limit.    That is a discretion that should be exercised with reference to particular instances, and the legislature acted wisely in depositing it with the local authorities.    They should have a more enlightened judgment upon the subject, and moreover, are directly amenable to the parties affected.

The court is of opinion that the law of 1864 is applicable to the case, and is not in contravention of the constitution.

The judgment of the District Court will be affirmed.

All the justices concurring.