GEORGE W. NEWMAN v. THE CITY OF EMPORIA *et al.*

1. CURATIVE ACT—*Local Improvements—Valid Assessment.* The curative act—Laws of 1885, chapter 101—is general in intent and operation, and an assessment for local improvements duly levied in pursuance thereof is valid.

2. TAX—*Injunction — Sufficient Notice—Valid Assessment.* In the original proceedings in 1882 an assessment was made upon plaintiff's property, notice of the assessment and opportunity to contest the same being given, but as the improvement was authorized and the levy made under a resolution instead of an ordinance, the assessment was held to be illegal. (32 Kas. 456.) On September 26, 1885, and in pursuance of the curative act, a re-levy was made by ordinance, with all due formality, of the entire assessment, with interest on the same at ten per cent. per annum from the time of the re-levy; but no new notice of the levy was given except by the publication of the ordinance re-levying the assessment. *Held,* In an action to enjoin the collection of the assessment, that sufficient notice and opportunity to oppose the same were given; that the method prescribed by the statute under which the assessment was apportioned is not so unequal and

unjust in its operation as to make it invalid; and further, that the collection of the assessment in the present instance should not be enjoined.

### Error from Lyon District Court.

ACTION to restrain the collection of a certain tax. Trial at the May term, 1887, and judgment for defendants. The plaintiff brings the case to this court. The facts are stated in *Newman v. City of Emporia,* 32 Kas. 456, *et seq.,* and in the opinion herein, filed at the session of the court in May, 1889.

*Kellogg & Sedgwick,* and *C. N. Sterry,* for plaintiff in error.
*W. W. Scott,* city attorney, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is a continuation of the controversy between George W. Newman and the city of Emporia that was before this court in 1884, respecting the levy of a special tax upon the property of Newman in that city for street improvements, and the decision then made is reported in 32 Kas. 456. The facts in this case are substantially the same as in that, except that since the earlier case was decided the legislature of 1885 passed a curative act as an amendment to § 41 of the act incorporating and governing cities of the second class. It provides that —

"In case the corporate authorities of any city have attempted to levy any assessments or taxes for improvements, or for the payment of any bonds or other evidence of debt, which assessments, taxes or bonds are or may have been informal, illegal or void for the want of sufficient authority or other cause, the council of such city, at or before the time fixed for levying general taxes, may re-levy and re-assess any such assessments or taxes in the manner provided in this act." (Laws of 1885, ch. 101.)

Subsequent to the passage of this act, and in pursuance thereof, the mayor and council of the city, on September 26, 1885, by ordinance, and "with all due formality," re-levied the entire amount of the special tax and assessment against the plaintiff's property, with interest at ten per cent. on the

amount of the tax from the date of the re-levy, as a tax of
1885. This amount was certified to the county clerk of Lyon
county, who entered the same on the tax-roll of the county
for the year 1885. The tax-roll was placed in the hands of
the county treasurer, who was proceeding to enforce a collec-
tion when this action was brought to have the assessment and
tax against the property declared void, and to enjoin the of-
ficers from proceeding further.

The plaintiff contends that the curative act under which
the re-levy was made is in contravention of §1 of article 12
of the constitution, which forbids the passage of any special
act conferring corporate powers, and is therefore void. There
is no force in this objection. The act is general in its form
and terms, and necessarily general in its effect.

1. Curative act—
local improve-
ments—valid
assessment.

It is not limited as to time, but is present and
prospective in its operation. Every city of that
class may take advantage of its provisions, and the experience
of the past indicates that numerous occasions for their appli-
cation will arise. Neither persons nor property should be
relieved from taxation in fair proportion by reason of the
errors or neglect of the corporate authorities; and as errors
are frequently made, the necessity for some curative legisla-
tion like this is apparent to all — a necessity which is not
confined to any particular city. It is manifest from the scope
of its operation that no particular instance or city was in mind
when it was enacted. It applies when a tax is informally or
illegally levied in a city, as well as when an assessment is so
levied. It applies in any city where the authorities have so
made a levy for improvements; and where either an assess-
ment or tax is informally or illegally levied for the payment
of bonds issued by the city, the act may operate; and it may
likewise apply wherever such a levy is made for the payment
of any other evidence of debt issued by the city. In every
view that may be taken the act must be regarded as general
in purpose and operation. (*City of Topeka v. Gillett*, 32 Kas.
431; *Mason v. Spencer*, 35 id. 512.)

A curative act like the one under consideration, except as

to the time when the re-levy may be made, was examined and upheld by this court in *City of Emporia v. Norton,* 13 Kas. 569; and the decision there reported answers some of the objections relied on in the present case. The main objections to the re-levy of the assessment are that it was imposed as a charge on the plaintiff's property without notice to him; and further, that it was made regardless of benefits to the property by reason of the improvements. That the owner must have some notice or opportunity to be heard in opposition to the special assessment before it becomes a fixed and permanent charge against the property, is conceded and well settled. (*Gilmore v. Hentig,* 33 Kas. 156.) But the plaintiff in the present case was not without notice or opportunity to contest the correctness of the valuation and appraisement. After the improvements were determined upon in August, 1882, appraisers were appointed by the mayor and council of Emporia, who made an appraisement of the property to be charged with the special improvements in question. When their report was returned, due notice thereof was given, and that a special session would be held a week later, at which time complaints could be heard as to the valuation, and appraisement made. The plaintiff did not avail himself of this opportunity, and, notwithstanding the notice given, he made no objection concerning these improvements until the commencement of the litigation heretofore mentioned. It is argued that all the preliminary proceedings taken, including notice, must be treated as void because the original levy was declared by this court to be illegal. It was not then determined that every preparatory step in the proceeding must be taken by an ordinance; indeed, the propriety of taking certain initiatory steps, such as precede the authorizing and ordering of the work by resolution, is recognized. It was decided that the authorization of the work, the manner of its performance, and the levy of the assessment to pay for the same, must be done by ordinance instead of by resolution; and this is the extent to which the decision in that case went. It is urged that while the curative act may remedy other preliminary steps that were defective,

it cannot dispense with a new and additional notice before the re-levy is made. If it is granted that the determination that the tax is void affected all the steps taken, and that another notice and opportunity to oppose the assessment are required to be given before the assessment re-levied under the curative act can become a charge against the property, still the plaintiff has no reason to complain. The parties agree that an ordinance re-levying the assessment was passed on September 26, 1885, "with all due formality," and as the ordinance must therefore have been published, it was notice to him, and he had an opportunity to further contest the fairness and regularity of the assessment before it became a charge on his property, which did not occur until the following November. It is not essential that this notice should have been given before the re-levy was made to sustain the assessment. In *Gilmore v. Hentig,* supra, it is said that —

"It is not necessary, however, in any case that the notice should be personally served upon the property-owner, or that the proceeding should be a judicial proceding; but any notice that will enable the property-owner to procure a hearing before some officer, board, or tribunal, and to contest the validity and fairness of the taxes assessed against him before the same shall become a fixed and established charge upon his property, will be sufficient."

Numerous authorities are there cited which sustain these propositions and the sufficiency of the notice given in the present case. The publication of the ordinance alone afforded the plaintiff due notice that an assessment had been levied on his property in pursuance of the act of 1885, which was intended to cure that which had been irregularly and illegally done before the re-levy, and he had ample time and opportunity after the re-levy, either before the council or in the court, to contest the justness and validity of the assessment before it became irrevocably fixed.

*2. Tax; sufficient notice.*

He next assails the validity of the assessment because, as he claims, it was not made on a just and correct basis, but was levied regardless of special benefits that would result from the improvement of the street. He claims that the rec-

ord contains an admission of this fact where it states "that the appraisers in appraising this property for the purpose of making the special assessment upon the same, were governed by their judgment as to what the value of such piece of property was without any improvements thereon, and did not take into consideration the question or any question of the benefits the improvements would be to such property or any part of it." This does not amount to an admission that the assessment was made without reference to special benefits. The appraisers, it is true, did not take into consideration the benefits which would result to each lot from the improvement to be made, nor make any assessment against the lots upon that standard, for that was not in their province or duty. The standard for apportioning the cost of the improvements is fixed by the legislature itself, and is to be applied to the lots or parcels of ground in the district according to the value of the same, exclusive of improvements thereon. All that is required of the appraisers is to fairly and impartially appraise the value of the lots or pieces of ground regardless of buildings or improvements thereon, reporting the same to the city council; and beyond the matter of fixing the actual value they are without discretion or power. (Comp. Laws of 1885, ch. 19, § 32.) They had, therefore, no power to distribute the expense of the improvements in accordance with benefits, except as their action in appraising the values indirectly affects the apportionment. The objection of the plaintiff, therefore, goes to the method prescribed by the statute rather than to the detailed action of carrying it out. The appraisers placed and returned a value on all pieces of property extending from the street to be improved to the center of the block, as the statute provides, and very little if any complaint is made against the fairness and justice of the valuation made. Further, it is agreed that the assessment was for needed improvements; that the work was well done upon competing bids, and the charges therefor were reasonable and not excessive. The plaintiff's lots did not abut on the street which was then improved, but they were in the half-block which did abut.

The manner of assigning districts for special taxation upon
the standard of benefits conferred, is largely a question for
the legislature, and the mode thus established is not to be
set aside because in the opinion of some individuals or
of the court some other plan would be more equitable
and just.    In 2 Dillon on Municipal Corporations, § 761, it is
said that, "When not restrained by the constitution of the
particular state, the legislature has a discretion coëxtensive with
the broad domain of legislative power, in making provisions
for ascertaining what property is specially benefited, and how
the benefits shall be apportioned."   Further along in the same
section the author states that the tendency of later decisions
"is to hold that the legislative power is not unlimited, and
that these assessments must be apportioned by some rule ca-
pable of producing reasonable equality, and that provisions
of such a nature as to make it *legally impossible* that the bur-
den can be apportioned with proximate equality are arbitrary
exactions, and not an exercise of legislative authority."    A
great variety of methods upon which assessments are levied
for local improvements have been adopted by the several leg-
islatures of the country, but it is doubtful whether any one
of them is more just in its application than the one adopted
by ours.    Rules based arbitrarily on frontage or on superficial
area have been sustained; but our method combines valuation
with area, and it is made more nearly equal and just by ex-
cluding from the valuation the buildings or improvements
that may be upon the lots.    It is doubtless true that our
scheme of assessment will in some cases operate unfairly, but
it is impossible to find one which will in all cases do absolute
and exact justice.    The district upon which the assessment is
levied is not great in extent nor unreasonable in form, nor can
we say that it is "legally impossible" to apportion the burden
of the assessment with proximate equality upon the lots in-
cluded therein.    The matter of assigning districts is confided
to the legislature, and its judgment must control, unless it has
plainly and manifestly passed beyond the limits of legisla-

tive power. (Cooley on Taxation, 429, 450.) The assessment reaches to the center of the block for the improvements of the surrounding streets, and in the present case the district in which the plaintiff's property was situate is 175 feet in width by 320 feet in length. The improvement of the streets surrounding this territory must in the nature of things be of special benefit to the same. As was said in *Ottawa v. Barney*, 10 Kas. 279: "There is a certain sort of relationship between streets and blocks, whose existence we all appreciate, no matter how illy it may be in fact recognized. The streets are for the service and use of the blocks; and the idea is that there should be such an adjustment of their numbers and size that each portion of the block should receive all needful service from the streets." The validity of the scheme of assessment devised by our legislature can hardly be regarded as an open question, as it has been approved directly and indirectly by this and other courts. (*Hines v. Leavenworth*, 3 Kas. 186; *Ottawa v. Barney*, 10 id. 270; *Emporia v. Norton*, 13 id. 586; *Gilmore v. Hentig*, 33 id. 156; *Mason v. Spencer*, 35 id. 512; *Downer v. Boston*, 61 Mass. 277; *Wright v. Boston*, 63 id. 233; *Brewer v. Springfield*, 97 id. 152; *Springfield v. Gay*, 12 Allen, 612; Cooley on Taxation, 456.)

The remaining objections are, that it was inequitable to assess the whole of the tax in one year, and to include a charge of ten per cent. interest on the amount of the assessment from the time of the re-levy. But neither of these will avail the plaintiff. The whole amount of the assessment was due and to be provided for in 1885. The improvements were completed in August, 1882, and an opportunity was given to the owners to pay the assessments on or before October 5th of that year. The bonds of the city to pay for the improvements were issued in October, 1882, payable in one, two, and three years, with interest at ten per cent. per annum, payable annually; and it will therefore be seen that the plaintiff pays less than the other property-owners, as he escapes all interest on the assessment except from the time

the re-levy was made.   We are inclined to think that the
<span style="font-size:smaller">Injunction re-</span>      action taken was proper; but the plaintiff has not
<span style="font-size:smaller">fused.</span>          paid or tendered any part of the taxes, and hence
he is not in a position to complain that the action was in-
equitable, or to obtain an injunction on the ground that the
amount of the levy was excessive. ( *City of Ottawa v. Barney*,
supra; *Mason v. Spencer*, supra.)

The judgment of the district court will be affirmed.

All the Justices concurring.