## SAMUEL DOWNER & others *vs.* THE CITY OF BOSTON.

A by-law of the city of Boston, providing that the expense of constructing a common sewer, after deducting the portion to be paid by the city, shall be assessed upon the persons and estates deriving benefit therefrom, either by the entry of their particular drains thereon, or by any more remote means, apportioning the assessment according to the value of the lands thus benefited, independently of any buildings or improvements thereon, is valid. And it is no objection to the validity of an assessment, made pursuant to such by-law, that the greater part of one lot assessed is lower than the bottom of the sewer.

THIS was an appeal from the judgment of the court of

common pleas, upon a report and award of referees, under *St.* 1841, *c.* 115, § 4, assessing the charges of the construction of a main drain or common sewer in Second Street in South Boston.

The charges were originally assessed by the mayor and aldermen, pursuant to the city ordinance of March 7, 1844, [Ordinances of Boston of 1850, 358,] making it their duty in making assessments for defraying the expense of constructing or repairing common sewers, to deduct from the said expense such part, and not less than one quarter part, as they may deem expedient, to be charged to, and paid by the city; and to assess the remainder thereof upon the persons and estates deriving benefit from such common sewer, either by the entry of their particular drains therein, or by any more remote means; apportioning the assessment according to the value of the lands thus benefited, independently of any buildings or improvements thereon.

The referees appointed by the court of common pleas, awarded the same damages as the mayor and aldermen. Their report, on motion of the petitioners, was recommitted by that court, with instructions to report the facts in the case, and the principles on which their award was based, and particularly, whether, in making up their assessment, they considered the benefit to the petitioners, caused by the sewer, or adopted, as a basis of assessment, the valuation of the property.

Their subsequent report stated, that the lands of the petitioners bounded on Second Street, and extended back one hundred and thirty feet to First Street: That the superintendent of drains testified that he assessed upon the landowners, benefited by the draining of their cellars or land, or who, by any more remote means, would receive any benefit from this drain, their proportional part of the charge of making the same; that he first obtained information at the assessors' office of the value and relative values of the lots of land thus benefited, and consulted one or more members of the committee of the city council on that subject, as to the depth of land to be assessed; that he assessed the petitioners for ninety feet in depth; that where a person owned sixty feet in depth

on the street, with no rights of drainage to rear owners, he assessed him for only sixty feet; that all vacant land running from street to street, he taxed one half; that on the upper side of Second Street, where the lots were smallest, he taxed sixty feet in depth; on the lower side, ninety feet; that he regarded only the value of the land, and paid no attention to the benefits derived from the drain ; that he estimated the petitioners' land at 50 cents a foot, and shallower lots at 75 cents a foot; that there was no drainage, to his knowledge, from the petitioners' land to the common sewer ; that the privilege of entering the main drain was a general benefit to all the estates bounding on the street under which it was laid, including the petitioners' land; and that he had devoted all his time to this business for eleven years, and had made all the assessments of a similar character since 1841, on the same principle.

The report also stated that it appeared in evidence, that the estate of the petitioners was now occupied by an oil factory; that the land descended gradually from Second Street to First Street, and that the level of the land, making the ground floor of the factory, was fourteen inches lower at the lowest part, than the bottom of the drain in question; all of the land beyond eighteen feet from the street, was somewhat lower than the bottom of the drain; and that the bottom of the cellar was seven feet lower; that the petitioners had not entered any drain into said main drain, but that a drain now ran from their land into the dock on the northerly side thereof; but their right to drain into said dock was disputed.

And the referees reported that, considering the relative values of all the land bounding on Second Street, and the position of the drain in relation to said lands, and the advantage to the estate of the petitioners, in having a common sewer, into which sinks and water from the upper stories, and from the front part of the basement or cellar story, could be carried, and the probable use that could be made of their land, the petitioners' estate was benefited by said drain in such proportion to the other lands on the street, that they ought to be assessed according to the previous award. And they de-

clined to determine sundry questions of law raised before them, being of opinion that they were appointed only for the purpose of settling and assessing the share to be charged to the petitioners, as designated by the order of the court appointing them.

One of the referees stated that he concurred in the report in all particulars, except in the statement of the principles on which the assessment was made; and as to that, he reported that the assessment, in his opinion, was made upon the valuation of the estate only, and not upon the principle that the estate received any benefit by draining their cellar or land.

Upon this report and award, judgment was rendered for the city, and the petitioners appealed to this court.

*W. Brigham,* for the petitioners.

*P. W. Chandler,* city solicitor, for the respondents.

SHAW, C. J. It appears to us that the order for the recommitment of the report of the referees was founded on a misapprehension. The court of common pleas seem to have supposed that the value of the estate could not be considered in the assessment; an impression probably caused by a misconception of the case of *Boston* v. *Shaw,* 1 Met. 130. The award had been already made, and the testimony upon which it was founded was not material; although, in point of fact, there had been no use of the drain by the petitioners. To explain the remark with regard to the misunderstanding of *Boston* v. *Shaw,* it is necessary to take into consideration the connection between the decision in that case, and the subsequent provisions of law upon the subject to which both relate. That case was decided in March, 1840, upon the ground, among others, that a portion of the by-law under which assessments were made on the defendant, was unreasonable and void. There was no longer any valid existing city ordinance upon the subject; and at the ensuing session of the legislature, the statute of 1841, *c.* 115, was enacted — apparently framed to avoid the objections to the old law — by which general authority was given to cities to construct drains, and assess the charge of their construction upon the persons benefited. And in pursuance of that statute, the city of Boston passed

the existing by-law, providing for assessments upon the persons and estates benefited by common sewers, either by entry of their particular drains therein, or by more remote means, according to the value of the lands benefited, independently of any buildings or improvements thereon.

The former ordinance was objected to as unjust and unreasonable, because the assessments under it were unequal in their operation. The owners of lots, which were built upon, were to be assessed in proportion to their value, including the buildings ; the owners of vacant lots, in proportion only to the value of the lots, which might soon after be improved. The court said, " the apportionment should be made upon the value of the land, independently of the buildings." They also said that " it must be considered as reasonable, that the charge should fall upon the lots abutting, which would have the privilege of entering particular drains from the respective lots into the main drain." And where the statute and ordinance subsequently speak of remote benefit, they mean the increased value given to vacant and unimproved lots by this privilege of letting in drains from them in case buildings should be so erected. An assessment upon the proprietors of land, so situated that it is or may be benefited by the sewer, is just and equal. There is an actual benefit to the land, since its value is increased for sale or improvement; and although it may be vacant territory, upon which the proprietors have not built, yet it is designed for building ; and the advantage accruing is a proper ground for assessment, whether upon lots occupied by houses, or designed for houses. It is like the case of sidewalks, where an assessment is levied for a common benefit, present or future, existing actually, or in expectation. And the party should be charged, although he never actually uses the drain ; perhaps not, indeed, if there be no prospect of the possibility of benefit. These we understand to have been the grounds of the statute and ordinance, and we are unable to see any valid objections to them. We do not understand that the value of the lots was to be excluded ; but that the value of the buildings on them, or of any improvement made by the owner or others was not to be considered.

24*

It is urged, in the present case, that the petitioners could never have occasion to use this drain. But the streets were one hundred and thirty feet from each other; and although it might for the present be convenient to drain from one lot upon the other, yet there was a probability that the time might come when it would be convenient to use the main drain. The lots might be graded, and they would then derive as much advantage as others from the city sewer. The majority of the referees fixed the assessment according to the benefit resulting from the sewer. The other did not dissent from them, but stated what he thought the basis of their apportionment. We think the majority right, and that it was proper to consider the benefit which might result from draining. There is nothing to show that they considered any other benefit, and their course was right and conformable to the statute, which looks not only to a present power of use, but to a benefit from future use.                           *Judgment affirmed.*