Gilmore, *County Clerk,* v. Hentig.

GEORGE T. GILMORE, *County Clerk, &c., et al.,* v. F. G. HENTIG, *et al.*

1. SEWER TAXES, *How Levied and Measured.* Where sewers are constructed under authority of a city, and afterward special taxes are levied upon the adjacent property-owners to pay for the same, only those individuals who can use such sewers should be taxed specially to pay for their construction or maintenance, and each should be taxed specially only for the amount of the special benefits which the sewers might confer upon him, and each should be taxed specially precisely in proportion to the benefits which he might individually receive.

2. NOTICE — *Opportunity to Contest.* Also in such cases, before special taxes can be made a fixed and permanent charge upon the property of such individuals, they must have notice, with an opportunity to be heard, and an opportunity to contest the validity and fairness of such taxes.

3. NOTICE, *When Sufficient.* It is not necessary, however, in any case, that the notice should be personally served upon the property-owner, or that the proceeding should be a judicial proceeding, or that the notice should be given before the taxes are levied; but any notice that will enable the property-owner to procure a hearing before some officer, board or tribunal, and to contest the validity and fairness of the taxes assessed against him, before the same shall become a fixed and established charge upon his property, will be sufficient.

4. VALID STATUTE; *Notice to be Given.* Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent property-owners, but does not require that any notice shall be given to the property-owners, *held,* that such failure to require notice does not render the statute unconstitutional, or void; but notice must nevertheless be given, and the city would have a broad discretion with reference to the kind of notice, and the manner of giving the same.

5. NOTICE *by Ordinance and Official Paper.* Where the only notice given in such a case was by the passage of two ordinances levying the taxes, and the publication of such ordinances and a notice for two days in the official newspaper of the city, and the ordinances were indefinite as to the notice given by them, and the special notice gave nothing more than a right to the property-owners to contest the *valuation* of their lots, *held,* that the notice given by the ordinances and the special notice may be sufficient to render the taxes valid, except for substantial reasons, but for such reasons the taxes may be void, or voidable.

6. SEWERS; *Apportionment of Taxes.* Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent property-owners, but does not prescribe any

mode for the apportionment of the taxes, *held*, that the statute may nevertheless be valid.    The city, in such a case, would have a right to adopt any mode for the apportionment of the taxes that would be fair and legal; and, as a general rule of apportionment, the levying of the taxes in proportion to the value of the lots taxed without the improvements thereon, would be fair and legal.

7. ENGINEER's ESTIMATE; *Cost.*    Prior to the construction of sewers and drains in a city of the first class, the city engineer should make "a detailed estimate" of the cost of the work, and should make the same "under oath;" and the taxes levied upon the adjacent property to pay for such sewers and drains should not exceed the estimated cost of the work, in cash.

8. ———— *Illegal Taxes.*    And in such a case, where the estimates are not fully in detail, and not under oath, and the taxes are largely in excess of the real estimates of the cost of the work in cash, *held*, that the taxes themselves are illegal, and at least voidable.

9. ———— *Injunction.*    And further, *held*, in such a case, that the property-owners are entitled to an injunction perpetually enjoining the collection of such taxes.

### *Error from Shawnee District Court.*

ACTION brought March 11, 1884, by *F. G. Hentig* and others against *Geo. T. Gilmore,* as county clerk, and *Bradford Miller,* as county treasurer of Shawnee county, and the *City of Topeka,* to perpetually enjoin the defendants from collecting certain taxes levied by the city of Topeka upon the lots of the plaintiffs in said city.    The action was tried by the court without a jury, at the April Term, 1884, and the court made certain special findings of fact and conclusions of law as follows:

#### FINDINGS OF FACT.

1. That the defendant, the city of Topeka, is a duly-organized city of the first class, situated in Shawnee county, Kansas; that the defendant, George T. Gilmore, was at the time this action was brought the county clerk of said Shawnee county; that the defendant, Bradford Miller, was at the time this action was brought, and is now, the county treasurer of said Shawnee county; that said plaintiffs respectively own the real estate situated in said city of Topeka, alleged in said petition to be respectively owned by them.

2. That prior to the commencement of the building of any of the sewers hereinafter mentioned, the mayor and council-

men of the city of Topeka, deeming it necessary to provide said city with a system of sewerage, directed the city engineer of said city to prepare the plan of a system by which the whole of the city might be drained; that pursuant to said direction, the said city engineer did so prepare the plan of a general system of sewerage as aforesaid, by which plan every lot and parcel of ground in said city could be drained; that by said general plan the ground included within the limits of said city was divided into sub-districts having reference to the topography of the ground; and that by said general plan district No. 1 and district No. 2, hereinafter mentioned, were made two sub-districts. Said general plan was submitted to said mayor and councilmen, and by them approved and placed on file with the maps and profiles of said general plan. There were also at the same time submitted plans and specifications in detail for the doing of said work, which said plans and specifications were also approved by the mayor and council, and filed.

3. That afterward, said mayor and councilmen, deeming it desirable to construct and put in a portion of said sewers contained in said district No. 1, caused an estimate to be made by the city engineer of said city of the cost of putting in that portion of said sewers then deemed advisable to be constructed, which said estimate was as follows:

[Here follows an estimate made by the city engineer.]

Said estimate is the only estimate filed by the city engineer for the construction of said sewers, and was made on credit basis, payable in scrip, and was fifteen per cent. higher than the estimated cost of said work in money, which said estimate has reference to and is the estimate upon which the contract for said work was let and said work done. Said estimate was duly approved by said mayor and councilmen, and filed June 5, 1882.

Afterward the mayor and councilmen of said city advertised for proposals for the doing of said work, and entered into a contract with the lowest bidder for the doing of said work, and said contractor constructed said work under said contract; and after the same was completed, said work was accepted by the said mayor and council.

[Numbers 4 and 5 of the special findings of fact contain simply statements of other estimates made with respect to sewer district No. 2, and are in form and also in words, except merely the estimates themselves, the same as special finding of fact No. 3; and the estimates were filed respectively on August 29, 1882, and March 12, 1883.]

6. All of said sewers, as provided for by said general system of sewerage, to be built in said districts Nos. 1 and 2, were not included in any of said contracts, and have not yet been completed; and said system of sewerage in said districts Nos. 1 and 2 has not yet been fully completed.

7. During the construction, and upon the completion of said parts of said work according to the contracts hereinbefore mentioned, the said city of Topeka issued to said contractor certain scrip or warrants for the amount of said contracts respectively, which said scrip was signed by the mayor and the clerk, and was drawn on the city treasurer, ordering him to pay said contractor the amount of the said contract, payable at such time in the future as the said mayor and council then supposed a tax hereinafter mentioned could be levied and collected for that purpose. Said scrip was all dated prior to August 22, 1883, and was made payable as follows: One-half January 1, 1884, one-fourth July 1, 1884, and one-fourth October 1, 1884. Said scrip, issued during the construction of said work, was issued upon estimates of the work then done, made by the city engineer, and upon the completion of said work, scrip for the balance of the contract price was issued.

8. That afterward, the mayor and councilmen of said city duly enacted the following ordinance, (said ordinance is attached to plaintiff's petition, marked "Exhibit B," and is hereby referred to and made a part of this finding of fact as though copied in full herein,) which ordinance was duly approved, and duly and legally published September 8, 1883.

9. That afterward, on the 16th day of October, 1883, for the purpose of paying the costs and expenses of constructing and putting in said sewers as aforesaid constructed and put in, the said mayor and councilmen of said city duly levied and assessed a tax against the lots and pieces of ground contained in said districts, in an amount sufficient to pay the costs and expenses of the building and putting in of said sewers, and no more. The costs and expenses of putting in said sewers in said district No. 1 were assessed and levied against the lots and pieces of ground contained in said district No. 1. The cost and expense of putting in the sewers constructed in said district No. 2 were assessed against the lots and pieces of ground contained in said district No. 2. No assessment was made upon any property in said district No. 1, except to pay for sewers which had actually been built in said district, but the whole cost of building said sewers in said district was assessed upon the property in that district. No assessment

was made upon the property in said district No. 2, except to pay for sewers that were built in said district No. 2, but the whole cost of sewers built in said district No. 2 was assessed upon the property in said district. Each lot and piece of ground was assessed for its due proportion of the whole tax assessed against the property in the district; said proportion being determined by said valuation. The levy of said tax was made by the ordinance hereinbefore set out in finding No. 8, as by reference to said ordinance will more fully appear, and by another ordinance approved October 6, 1883, and published October 16, 1883; which said tax was duly certified to by the clerk of said city of Topeka, to George T. Gilmore, as county clerk of Shawnee county, Kansas, in which said city is located, and was by said county clerk placed on the tax-roll of said county for collection.

10. Before said levy of assessments was made, and with a view of making said assessment, the mayor and council of said city duly appointed three appraisers, who thereupon took the following oath:

*State of Kansas, county of Shawnee, city of Topeka, ss.*—Albert Parker, N. L. Gage, and A. V. Auter, all of lawful age, being first duly sworn, say: That each of them are householders of the city of Topeka, Shawnee county, state of Kansas; that each of them will faithfully and impartially discharge their duties as appraisers, for the purpose to assess the valuation of lots and pieces of ground contained in the respective sewer districts, without the improvements thereon, as per ordinance No. 497, approved September 4, 1883. So help us God.          (Signed)          ALBERT PARKER.
                                                                    N. L. GAGE.
                                                                    A. V. AUTER.
Subscribed and sworn to before me, this 5th day of September, 1883.
          [Seal.]          GEO. TAUBER, *City Clerk.*

And they thereupon proceeded to appraise the lots and pieces of ground situated in said districts Nos. 1 and 2. Said appraisers valued or appraised each and every piece of ground situated in said districts Nos. 1 and 2, regardless of any improvements thereon, making their appraisement according to the actual value of each and every lot or piece of ground as the same would be without any improvements thereon, and said assessments were made upon the basis of said valuation. After said appraisement was returned by said appraisers and filed with the said clerk of said city, the mayor and council caused a notice, of which the following is a copy:

[First published—*Daily State Journal,* September 22, 1883.   Second publication—*Daily State Journal,* September 24, 1883.]

OFFICIAL NOTICE.

MAYOR'S OFFICE, CITY OF TOPEKA.
There will be a special meeting of the city council on Monday, September 24, 1883, at 8 o'clock P. M., for the purpose of hearing any complaint

that may be made as to the valuation assessed by the appraisers of any lots or pieces of ground abutting on the several alleys upon and along which paving has been done by the city of Topeka, to wit:

In the alley bounded on the north by Fifth street east, by Kansas avenue on the east, by Sixth avenue on the south, and Jackson street on the west.

In the alley bounded on the north by Sixth avenue east, on the south by Seventh street, by Kansas avenue on the east, and Jackson street on the west.

In the alley bounded on the north by Fifth street, on the east by Quincy street, on the south by Sixth avenue east, and by Kansas avenue on the west.

In the alley bounded on the north by Seventh street, and on the east by Quincy street, on the south by Eighth avenue east, and on the west by Kansas avenue.

Also to hear any complaint that may be made as to the valuation assessed by the appraisers of any lots or pieces of ground contained in the following-named intercepting sewer districts, to wit:

*District No. 1.*— Beginning in the center of Kansas avenue, at its intersection with the south bank of the Kansas river, thence southerly in the center of Kansas avenue to its intersection with the center of Tenth avenue, thence westerly along the center of Tenth avenue to its intersection with the center of Van Buren street, thence southerly along the center of Van Buren street to its intersection with the center of Eleventh street, thence westerly along the center of Eleventh street to its intersection with the center of Topeka avenue, thence northerly along the center of Topeka avenue to its intersection with the south bank of the Kansas river, thence easterly down the south bank of the Kansas river to place of beginning.

*District No. 2.*— Beginning in the center of Monroe street, at its intersection with the south bank of the Kansas river, thence southerly along the center of Monroe street to its intersection with the center of Eleventh street, thence westerly along the center of Eleventh street to its intersection with the center line of Kansas avenue and the east line of intercepting sewer district No. 1, thence northerly along the center line of Kansas avenue, and along the east line of said intercepting sewer district No. 1, to its intersection with the south bank of the Kansas river, thence easterly along the south bank of the Kansas river to the place of beginning.

Witness my official hand and the seal of the city of Topeka hereto attached, this 22d day of September, 1883. M. HEERY,
*President of the Council, and Acting Mayor.*
Attest: GEO. TAUBER, *City Clerk.* [Seal.]

To be published in the official paper of said city, notifying the property-owners in said district that such appraisement and valuation of the property in said district had been made with a view of levying a tax thereon to pay for the sewers built therein, and that there would be a meeting of the council on the 24th day of September, 1883, at which meeting they could appear and show cause why said appraisement and valuation was not equitable and just. At said meeting the mayor and council approved and ratified said valuation and appraisement as made by said appraisers.

11. There was no money in the city treasury at the time said work was begun, or afterward, with which to pay for said work, and no money was set apart in the treasury of said city

11.— 33 KAS.

by ordinance before or at the time said work was begun, to pay for the same.

12. There are some lots and pieces of ground in said districts which cannot be drained by the sewers now completed, but all of said lots and pieces of ground may be drained when said system of sewerage, hereinbefore mentioned, is fully completed. There is no property mentioned in said petition, belonging to said plaintiffs, but what can be drained and is drained by the sewers now built and completed, except lots 195 and 197 Monroe street, lots Nos. 14 and 16 Van Buren street. Some of said plaintiffs, before this action was commenced, had connected their buildings, situated on their said lots, with the sewers so built as aforesaid, and were and are using said sewers.

13. The advertisements for bids for the construction of said sewers, published by the said city, stated that payment for said work would be made in city scrip, and payable as follows: One-half on January 1, 1884, one-fourth on July 1, 1884, and one-fourth on October 1, 1884; and the cost of doing said work, by reason of the fact that payment therefor was to be made in the future, as aforesaid, was about 15 per cent. greater than it would have been if payment had been made in cash, at the time the work was done, and as the work progressed. The first contract, hereinbefore mentioned, was entered into between the city and C. J. Rosen, on July 14, 1882; said second contract was entered into between the same parties, October 9, 1882; said third contract was entered into between the city and H. I. Cook & Co., May 14, 1883; and all of the work hereinbefore mentioned was done under said contracts.

14. The cost of grading for the outlet of the sewer in said intercepting sewer district No. 2 was about $400, and the cost of building the stone abutment for the same place was about $2,000; both of which items were included in the cost of sewers, and assessed against the property in said intercepting district No. 2.

15. All of said sewers were constructed and accepted by the city prior to the passage of the ordinance mentioned in finding No. 8.

16. In making the appraisement mentioned in finding No. 10, no other matter or thing was taken into consideration by the appraisers except the actual value of the lots and pieces of ground at that time, as the same would be without any improvements thereon.

17. That by said general plan approved and adopted by

the city council, said city of Topeka was divided into two dis-
tricts — one being the territory on the north side of the river,
and the other being the territory on the south side of the
river. Said general plan was approved and adopted June 5,
1882.

### CONCLUSIONS OF LAW.

As conclusions of law, the court finds as follows:

*First:* That the estimates submitted by the city engineer
for the construction of the sewers were in substantial conform-
ity to the law, and therefore valid.

*Second:* That the contracts entered into between the city
and the contractors for the performance of said work were in
substantial compliance with the law, and therefore valid.

*Third:* That the proceedings of the mayor and city council
in the levy and assessment of the taxes upon the property-
holders, without notice to them of such valuation and appraise-
ment, was void, and for this reason the said taxes so levied are
void, and the judgment must be for the plaintiffs.

To the third conclusion of law the defendants excepted.
To the first and second conclusions of law the plaintiffs ex-
cepted. The defendants filed a motion for judgment in their
favor upon the foregoing findings of fact, which motion the
court overruled. They also filed a motion for a new trial,
which was overruled. Thereupon the court adjudged that —

"The defendants, and each of them, be and they are hereby
perpetually enjoined and restrained from collecting the special
assessments in plaintiff's petition mentioned, and hereinbefore
levied and assessed against the property of plaintiffs as set
out in the findings of fact herein made, and from selling or
offering for sale the property of plaintiffs, in said petition de-
scribed, for the purpose of paying said special assessment, and
that plaintiffs recover of and from defendants their costs herein,
taxed at —— dollars."

The defendants bring this judgment here for review.

*A. B. Quinton,* and *J. D. McFarland,* for plaintiffs in error.

*F. G. Hentig,* and *W. P. Douthitt,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action, brought on March 11,
1884, in the district court of Shawnee county, by F. G. Hen-

tig and others against George T. Gilmore, county clerk, Brad-
ford Miller, county treasurer, and the city of Topeka, to
perpetually enjoin the defendants from collecting certain sewer
taxes levied by the city of Topeka upon the lots of the plain-
tiffs in said city.   The action was tried by the court without
a jury, and the court made certain special findings of fact and
conclusions of law, and rendered judgment upon such findings
and conclusions in favor of the plaintiffs and against the de-
fendants, perpetually enjoining the defendants from collecting,
or attempting to collect, said taxes.   The defendants, as plain-
tiffs in error, now bring the case to this court for review, and
allege error in the third conclusion of law and in the judgment
rendered by the court below.

The defendants in error, plaintiffs below, claim that the
judgment of the court below is correct, for the reason that the
taxes levied upon their lots are utterly null and void; and they
claim that the taxes are utterly null and void for the follow-
ing reasons: (1) That the statute under which such taxes
were levied is unconstitutional and void, for the reason that
it does not provide for any notice being given to the owners
of the property taxed, or for any opportunity for them to be
heard with reference to such taxes, and no sufficient notice was
in fact given; (2) that said statute is unconstitutional and
void, for the further reason that it does not provide for levy-
ing the taxes with any reference to the benefits that might re-
sult to the owners of the property taxed from the construction
of the adjacent improvements; and the taxes were not in fact
levied with any reference to resulting benefits; (3) that there
was no detailed estimate made by the city engineer, and the
estimates that were made were not under oath; (4) that the
mayor and council, instead of determining for themselves what
the size, location and grade of the sewers, and all the other
necessary requirements in the construction of the sewers should
be, delegated such authority to the city engineer; (5) that
the form of the oath taken by the appraisers of the value of
the lots was not the form required by the statute, and was in-
sufficient; (6) that the taxes levied were in excess of the

estimates made by the city engineer of the cost of construct-
ing the sewers, and even the estimates themselves as thus made
were fifteen per cent. in excess of the real estimates of the cost
of the work.

The statutes referred to by counsel as being specially appli-
cable to this case are §§ 19 and 22 of the first-class-city act,
which read as follows:

"SEC. 19. The mayor and council shall have power to pro-
vide for a system of sewerage and drainage for the city, or any
part thereof, and to build and construct sewers or drains by dis-
tricts or otherwise, as the mayor and council may designate.
The cost and expense of constructing the same shall be assessed
against the lots or pieces of ground contained in the district in
which the same is situated, and the cost of same shall be levied
and collected as one tax in addition to other taxes and assess-
ments, and shall be certified by the city clerk to the county clerk,
to be placed on the tax-roll for collection, subject to the same
penalties and collected in like manner as other taxes, as pro-
vided by law: *Provided,* That where any property has paid its
full proportion for general sewers and drains in one district,
it shall not be transferred to any other made liable for taxation
for sewers and drains therein." (Laws of 1881, ch. 37, § 19.)

"SEC. 22. Before the city council shall make any contract
for building bridges or sidewalks, or for any work on streets,
or for any other work or improvement, a detailed estimate of
the cost thereof shall be made under oath by the city engineer,
and submitted to the council; and no contract shall be entered
into for any work or improvement for a price exceeding such
estimate, and in no case shall the city be liable for any allow-
ance beyond the original contract-price for such work." (Laws
of 1881, ch. 37, § 22.)

This section was amended on March 7, 1883, and it now
reads as follows:

"SEC. 22. Before the building of any bridge or sidewalk,
or any work on any street, or any other kind of work or im-
provement, shall be commenced by the city council, or under
their authority, a detailed estimate of the cost thereof shall be
made under oath by the city engineer and submitted to the
council; and in all cases where the estimated cost of the con-
templated work or improvement amounts to one hundred dol-
lars, sealed proposals for the doing or making thereof shall be

invited by advertisement, published by the city clerk in the official newspaper of the city for at least three consecutive days, and the mayor and council shall let the work by contract to the lowest responsible bidder, if there be any such whose bid does not exceed the estimate. If no responsible person shall propose to enter into contract at a price not exceeding the estimated cost, all bids shall be rejected and the same proceedings as before repeated, until some responsible person shall by sealed proposal offer to contract for the work at a price not exceeding the estimated cost. In no case shall the city be liable for anything beyond the estimated cost, or the original contract-price for doing such work or making such improvement. All sidewalks shall be built by contract, advertised for as herein provided. Before any such work or improvement, except building sidewalks, shall be commenced, the money to pay therefor must be set aside in the city treasury by an appropriation ordinance, regularly passed and published, and it shall be the duty of the city treasurer to take notice of such ordinance and be governed thereby." ( Laws of 1883, ch. 34, § 3.)

There were three estimates in all made by the city engineer —two of which were made and filed prior to the foregoing amendment of § 22, and the other was made and filed afterward. They were filed respectively as follows: June 5, 1882; August 29, 1882; and March 12, 1883. The most of the transactions and proceedings, and indeed all of the transactions and proceedings which had for their object the charging of the property of the plaintiffs below, defendants in error, with special taxes, took place after the taking effect of said amendment of § 22.

We suppose that in all cities of any considerable size a system of sewerage and drainage is absolutely necessary for the promotion of the health and comfort of the inhabitants, and to guard against epidemics and diseases generally, from the accumulation of filth and impurities. Both public and private individuals are interested in the construction of proper sewers and drains. But a proper system of sewerage and drainage can seldom if ever be brought into existence, except through the instrumentality of the public authorities. Individual effort is generally inadequate. The public has such an inter-

est in the improvements that it may order their construction, and the individuals who can use them, and whose property is specially benefited thereby, have such an interest in them that they may be ordered and compelled to pay for them, by paying special taxes levied upon their property to pay for their construction. Of course, however, only those whose property is specially benefited by the improvements can be compelled to pay such taxes. Special taxes to pay for sewers and drains can be levied only upon the property of persons who can use such sewers and drains, and not upon persons who cannot use them. And the taxes should be apportioned in accordance with the special benefits received by each individual severally. Persons whose lots do not abut upon a sewer or drain, or some branch thereof, but who would have to construct a ditch or sewer or drain through some other person's premises in order to reach the public sewer or drain, would of course not be liable to pay such taxes, as evidently they could not of their own choice and own volition use the public sewer or drain; and persons whose lots are lower than the public sewer or drain, and who could not force their sewage and waste waters up-hill to the public sewer or drain, would also, of course, not be liable to pay special taxes for the construction of the same. In these particulars, the use of sewers and drains differs from the use of public streets and alleys; for persons whose lots abut upon any public street or alley in a city may by reason thereof, and in connection with their lots, use all the streets and alleys of the city; and this whether their lots are higher or lower than the particular street or alley upon which their lots abut. Hence arguments in cases where special taxes have been levied to pay for street improvements cannot, in all cases, be made applicable in cases where special taxes have been levied to pay for the construction or maintenance of sewers or drains. And while there is a distinction between taxes for street improvements and taxes for the construction of sewers and drain, there is a still broader distinction between general taxes levied for general revenue purposes, and local or special taxes levied for the payment of local improve-

ments such as streets and alleys, and sewers and drains. One is levied directly for public purposes, although it may indirectly and remotely be beneficial to private individuals; while the other is levied directly for the purpose of procuring payment for the special benefits conferred upon individuals, although the improvement may also be beneficial to the public generally. Special taxes should be levied only for special benefits conferred upon the property of the individuals taxed, and never for the general benefits received and shared by all the members of the public in general; while general taxes should be levied only for the public benefit. To levy a special tax upon the property of particular individuals for general revenue purposes, would be a violation of section 1, article 11, of the constitution. (*Hammett v. Philadelphia*, 65 Pa. St. 146; *Tidewater Co. v. Coster*, 18 N. J. Eq. 518; *Dyar v. Farmington Vil. Cor.*, 70 Me. 515.)

In street improvements it is sometimes difficult to separate the special benefits to individuals from the public benefits to all, for the two are sometimes so intimately connected with each other that they cannot well be separated. The ability of an abutting lot-owner to pass directly from his lot into a public street, and from the street to his lot, is a special benefit as to him; yet to travel upon the street in front of his lot, or to or from the line of his lot, is a general benefit which he may enjoy in common with all the other members of the public. (*Trosper v. Comm'rs of Saline Co.*, 27 Kas. 391, 393, 394.) And because of this difficulty in separating the two kinds of benefit from each other, injustice may often be done, and sometimes is done. But such need not often be the case with respect to taxes for the construction of sewers or drains. With respect to sewers and drains, the general and the special benefits are usually more distinct, and special taxes may be levied for the payment for each kind of benefit with greater certainty. With respect to sewers, it may generally be known almost to a certainty just what particular sewer or sewers will carry off or assist in carrying off the particular sewage of each particular lot-owner; and only those who can use such sewer or

sewers should be taxed specially to pay for their construction, or maintenance; and each should be taxed specially only for the amount of the special benefits which the sewer or sewers might confer upon him; and each should be taxed specially precisely in proportion to the benefits which each might individually receive. As illustrating these propositions, we would refer to the following authorities: *Thomas v. Gain,* 35 Mich. 156; *Tide-Water Co. v. Coster,* 18 N. J. Eq. 518; *Cleveland v. Tripp,* 13 R. I. 50; *Hammett v. Philadelphia,* 65 Pa. St. 146; *Washington Avenue,* 69 id. 352; *Nichols v. Bridgeport,* 23 Conn. 189; *City of Hartford v. West Mid. Dist.,* 45 id. 462; *Dyar v. Farmington,* 70 Me. 515; *Crawford v. The People,* 82 Ill. 557; *City Praying for Opening Streets,* 20 La. An. 497; 2 Desty on Taxation, 1237, 1238. Some of these cases are with reference to sewers and drains, but the most of them are with reference to street improvements; but all illustrate the limitations placed upon the levying of local or special taxes.

Also, before special taxes can be made a fixed and permanent charge upon the property of individuals, the owners must have notice thereof, with an opportunity to be heard, and an opportunity to contest their validity and fairness. (*Gatch v. City of Des Moines,* decided by the supreme court of Iowa, January 31, 1884; 3 Am. and Eng. Cor. Cases, 622, and note, and cases there cited; *Thomas v. Gain,* 35 Mich. 156; *Lampson v. Drain Comm'rs,* 45 Mich. 150; *City of Nashville v. Weiser,* 54 Ill. 246; *Butler v. City of Chicago,* 56 id. 341; *Stuart v. Palmer,* 74 N. Y. 183; *Sewell v. City of St. Paul,* 20 Minn. 511; *State, &c., v. Road Comm'rs,* 41 N. J. L. 83; *County of Santa Clara v. S. P. Rld. Co.,* 13 Am. & Eng. Rld. Cases, 183.)

This proposition will indeed apply to all taxes upon property, general as well as special. With reference to general taxes, however, the statutes are usually a sufficient notice to the owners of property; for the statutes themselves usually provide for levying and collecting such taxes annually, and fix a time within which the assessment shall be made, a specific time and place for the equalization of the assessment, a specific time

and place for the levying of the taxes, a time within which the amount of the taxes shall be placed upon the tax books, and a specific time for the tax books to be delivered to the tax collector or treasurer, and a specific time for the taxes to become a lien upon the property taxed. Hence it is generally unnecessary to give any specific notice with reference to the assessment or levy. of general taxes. (*Gulf Rld. Co. v. Morris*, 7 Kas. 226.) But the statutes alone cannot usually furnish a sufficient notice to property-owners with .regard to special taxes levied upon their property; for special taxes are levied at very irregular periods of .time, for various purposes, and in various ·modes. Hence it is generally necessary to give . to property-owners some specific notice with regard to special taxes. It is not necessary, however, in any case, that the notice should be personally served upon the property-owner, or that the proceeding should be a judicial proceeding; but any notice that will enable the property-owner to· procure a hearing before some officer, board, or tribunal, and to contest the validity and fairness of the taxes assessed against him before the same shall become a fixed and established charge upon his property, will be sufficient. Nor is it necessary in any case, that the notice should be given before the taxes are levied. All that is necessary, is that the notice shall be given before the taxes shall have become such a fixed and permanent charge that the property-owner can have no adequate remedy to contest their validity or fairness. In support of· the foregoing propositions, we would cite the following authorities: *Cleveland v. Tripp*, 13 R. I.· 50; *Allen v. Charlestown*, 111 Mass. 123; *City of St. Louis v. Oeters*, 36 Mo. 456; *In re De Peyster*, 80 N. Y. 565; *Dunning v. Township Drain Comm'rs*, 44 Mich. 518; *Davidson v. New Orleans*, 96 U. S. 97; *McMillen v. Anderson*, 95 id. 37; *Finnell v. Kates*, 19 Ohio St. 405; *McMicken v. City of Cincinnati*, 4 id. 394; *Nichols v. Bridgeport*, 23 Conn. 190.

The taxes may be levied provisionally before the notice is given, and be made a permanent charge afterward. But, as before stated, the taxes cannot become a fixed and permanent

charge until after sufficient notice has been given, and the property-owner had ample time and opportunity to contest their legality and fairness. In the present case, the statutes do not require that any notice shall be given; hence the defendants in error, plaintiffs below, claim that the statute purporting to authorize the construction of sewers and drains is unconstitutional and void, and therefore that no special taxes for the construction of sewers or drains can be levied; while the plaintiffs in error, defendants below, claim that the statute is valid, and that no notice of any kind is necessary. We do not agree with either of the parties. We think that the statute is valid, and still that a notice is required. Of course, if no other or paramount law required that notice should be given, then we would think that the statute would be sufficient within itself, and that no notice of any kind would be required; but we think there is another and paramount law, requiring a notice. This other and paramount law is embodied in the fourteenth amendment to the constitution of the United States, which provides as follows: "Nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." Such a law is probably also embodied within some of the provisions of our own constitution, though not so clearly as in the said fourteenth amendment.

As before stated, we think that the statute is valid, but nevertheless that notice of some kind must be given; but as the statute says nothing about a notice, the city evidently has a broad and almost unlimited discretion with reference to the kind of notice that may be given, and the manner in which it may be given. When the legislature provided that a city of the first class should have the power to provide for a system of sewerage and drainage, it incidentally and impliedly gave power to the city to use all the means for providing for such system of sewerage and drainage as might be required or might be necessary under any law or laws of the state or the United States, including both the state and the federal constitutions. The question then arises: Was the notice which was

in fact given in the present case sufficient? Now we cannot say that it was wholly and entirely insufficient. After the sewers were constructed and their cost determined, and on September 4, 1883, the mayor and council passed an ordinance provisionally levying special taxes upon the owners of property within the several sewer districts where such sewers had been constructed. This ordinance was regularly and duly published in the official newspaper of the city on September 8, 1883. On Saturday, September 22, 1883, and on Monday, September 24, 1883, a notice was published in the official newspaper, giving notice to all property-owners within said sewer districts to appear at a special meeting of the city council to be held on Monday, September 24, 1883, at 8 o'clock P. M., to hear all complaints that might be made with respect "to the valuation assessed by the appraisers of any lots or pieces of ground contained" in said sewer districts. On October 6, 1883, another ordinance was passed, finally levying the special taxes upon the property of the lot-owners in said sewer districts, and on October 16, 1883, this ordinance was duly published in the official newspaper; and under the laws of Kansas these taxes could not become a fixed and established charge or lien upon the property taxed prior to November 1, 1883, when the tax books are required by law to be delivered to the county treasurer to enable him to collect the taxes. (§ 85 of the tax law of 1876; Comp. Laws of 1879, ch. 107, § 85.)

Now the property-owners had some notice with regard to the taxes assessed against them: (1) From the city ordinance published September 8, 1883; (2) from the direct notice given to them and published September 22 and 24, 1883; and (3) from the city ordinance published October 16, 1883; and they had ample time after such notice and before the taxes became a fixed lien or charge upon their property, November 1, 1883, to apply to the city council to make corrections or changes in their taxes, or to commence an action in the district court to enjoin all further proceedings, or for some other sufficient and adequate relief. We cannot say that the notice in this case was wholly and entirely insufficient, and yet it was defective

in several particulars. Neither the ordinances nor the notice published in the official newspaper contained any mention of the particular property taxed, or of the owners thereof, and the notice published in the official newspaper was for too short a period of time prior to the special meeting of the city council to hear complaints; and it was further defective in not giving to the lot-owners the privilege of making all the objections which they might have desired to make with reference to the validity or fairness of the special taxes. It gave to them the privilege only of making complaint concerning the *valuation* of the lots as assessed by the appraisers, and nothing more. None of the objections which the defendants in error, plaintiffs below, now make to the validity and fairness of said taxes, had they any right to make within the terms of said notice. Taking the ordinances and the notices together, however, the combined notice which they gave was probably sufficient to render the tax proceedings valid, except for substantial reasons; but for substantial reasons the taxes might still be void, or voidable—probably only voidable. We shall hereafter consider the other reasons which the defendants in error, plaintiffs below, now urge as grounds for holding that the taxes are void, or voidable.

The defendants in error, plaintiffs below, also claim that the statute authorizing the construction of sewers and drains is unconstitutional, for the further reason that it does not provide for levying taxes with reference to the special benefits resulting from the improvements to the property taxed or to the owners thereof; and they also claim that the taxes were not in fact levied with reference to resulting benefits. The taxes were in fact levied in proportion to the value of the lots taxed, without the improvements thereon. Now as the statute does not prescribe any mode for the apportionment of the taxes, we would think the city would have a right to adopt any mode that would be fair and legal; and we would also think that the mode adopted by the city was fair and legal. Of course it might in particular instances work injustice or hardship, and not be legal or valid; and in all probability there are

such instances in the present case; but, looking at it as a mere rule of apportionment, we think it is valid. There are various modes of apportionment, among which are the following: (1) In accordance with the special benefits directly ascertained by assessors or appraisers; (2) in accordance with the value of the lots, without the improvements on them; (3) in accordance with the value of the lots, with the improvements on them; (4) in proportion to the frontage of the lots; (5) in proportion to the superficial area of the lots. The first would undoubtedly be valid, though it might be difficult to make it practicable. The second we think is also valid as a general rule of apportionment. (*Downer v. Boston*, 61 Mass. 277; *Wright v. Boston*, 63 id. 233.) With reference to the other modes, we do not now wish to express any opinion.

The defendants in error, plaintiffs below, also claimed that there was no detailed estimate made by the city engineer, and that the estimates that were in fact made, were not under oath. We think the estimates are subject to some criticism in both of these respects. The aggregate costs for some of the excavations, and for some of the masonry work, do not seem to have been stated in the estimates, and no sufficient data are given whereby such costs may be ascertained or known; nor does it appear that the estimates were under oath; that is, it does not appear that the city engineer took any special oath with reference to these estimates, which we think is necessary under said § 22; and this we think is not a mere technicality, but, as we shall hereafter see, is a matter of substance.

The defendants in error, plaintiffs below, also claim that power was wrongfully delegated by the mayor and council to the city engineer. Now this does not fully appear, and probably it was not the case.

The defendants in error, plaintiffs below, also claim that the form of the oath taken by the appraisers was not the form required by statute, and was insufficient. Now the statute does not prescribe any form of the oath for the appraisers in this class of improvements, and we see no particular objection to the form of the oath that was taken.

It is further claimed by the defendants in error, plaintiffs below, that the taxes levied were in excess of the estimates made by the city engineer, and it is also claimed that the estimates themselves as thus made were fifteen per cent. in excess of the real estimates of the cost of the work — and all this appears to be true from the record. · The excess of the taxes over and above the estimates made by the city engineer appears to be $5,204.79, and these estimates are in fact fifteen per cent., or something over $6,000, above the real estimates of the cost of the improvements in cash, making the taxes appear to be over $11,000 in excess of the real estimates of the cost of the improvements in cash. The real facts are probably not quite so bad, but still the taxes are very largely in excess of the estimates of the cost of the improvements in cash, at least fifteen per cent., and probably much more. This is all in violation of § 22 of the first-class-city act. That section requires that the estimates shall be in *detail* and *under oath*, and that the cost of the improvements shall not exceed the estimates, and that the city shall not be liable for any greater amount than such cost. All of these provisions were partially at least ignored. Everything connected with this case was done after § 22 was enacted in 1881, and one of the estimates was made, and the work was probably all done, and the taxes were all levied, after said section was amended in 1883; and yet it would seem that the city engineer and the mayor and council ignored the provisions of that section to a very great extent. The legislature evidently intended that the section should be strictly complied with; hence it required that the city engineer should make "a detailed estimate" of the cost of the work, and should make the same "under oath," and that the cost of the work should not exceed this estimate. It was evidently the intention of the legislature that the work should not cost the city or the lot-owners more than it was *actually* worth in *cash*. Hence this "detailed estimate;" hence this special "oath" of the city engineer; and hence the other rigid and explicit provisions contained in said § 22 with reference to the cost of the work. All this was ignored by the city authori-

·ties.   We think that the city authorities, by ignoring the provisions of said § 22, have rendered the special taxes which ·they levied on the lot-owners' property at least voidable, if not void.   The case of *Gilmore v. Norton*, 10 Kas. 491, 508, ·was decided under a different statute, and can have no application to this case.   Besides, the taxes and the cost of the work in that case were for much less than the estimated cost ·of the work.

We think the defendants in error,• plaintiffs below, are entitled to their injunction; and the judgment of the court below will therefore be affirmed.

All the Justices concurring.