Douglass v. Craig.

---

### John C. Douglass v. Imogene Craig.
#### No. 91.

1. Delinquent Tax-list—*Publication—Transmission to Treasurer.* Where the affidavit made by the printer of the delinquent tax-list is transmitted to the county clerk, instead of the treasurer, within the 14 days as required by law, and it is not shown that the same did not come into the hands of the treasurer within the time so limited, and it appears that the treasurer acted upon the same as if transmitted to him direct, it will be presumed that the treasurer did duly receive it, and the mode of transmittal will be considered a mere irregularity, and will not vitiate a deed founded upon such sale.

2. City—*Local Improvements—Assessment of Taxes.* Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent property owners, but does not prescribe any mode for the apportionment of the taxes, the city in such case would have a right to adopt any mode for the apportionment of the taxes that would be fair and legal; and, as a general rule of apportionment, the levying of taxes in proportion to the value of the lots taxed, without the improvements thereon, would be fair and legal. (*Gilmore v. Hentig*, 33 Kan. 156.)

Memorandum.—Error from Leavenworth district court; Robert Crozier, judge. Action in ejectment by John C. Douglass against R. B. Craig. On defendant's death Imogene Craig was substituted. Judg-

Douglass v. Craig.

ment for defendant.  Plaintiff brings the case to this court.  Affirmed.  The opinion herein, filed September 9, 1896, states the material facts.

*John C. Douglass*, plaintiff in error, for himself.

*Baker, Hook & Atwood*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J.: On the 7th day of May, 1887, John C. Douglass commenced this action in the district court of Leavenworth county against R. B. Craig, for the recovery of certain real estate in the city of Leavenworth, and for the rents, issues and profits thereof from the 15th day of November, 1884, up to the time of the commencement of this action, and for damages for withholding the possession of said property.  Before a trial was had R. B. Craig died, leaving the now defendant in error, Imogene Craig, his sole heir and devisee under his will.  Thereupon a supplemental petition was filed against her, to which she answered by general denial and plea of possession for more than 15 years, and afterward by a supplemental answer, setting up title to the land in controversy in her own right under and by virtue of a tax deed, to which plaintiff filed a reply of general denial.

At the April term, 1891, the cause came on for trial before the court, a jury being waived.  The court made special findings of facts and conclusions of law as follows:

"FINDINGS OF FACT.

"1. On the 18th day of April, 1887, the plaintiff, through a quitclaim deed from one of the heirs of Daniel L. Henry, became the owner of one undivided one-fourth (¼) of the lots in controversy, and immediately caused said deed to be recorded in the proper office.  Prior to the execution of the said quitclaim

deed, plaintiff claimed to be the owner of said lots by virtue of certain tax deeds from the county and city of Leavenworth, which were, however, void upon their face, and conveyed no title to the plaintiff.

"2. On November 14, 1884, R. B. Craig, the then husband of the defendant, obtained from the county of Leavenworth a tax deed for the taxes of 1878 upon said lots, regular and valid upon its face, but invalid by reason of defects upon which it was founded, which deed was recorded in the proper office November 19, 1884.

"3. Said R. B. Craig, on the 7th day of July, 1887, died, and the defendant, Imogene Craig, then became the owner of whatever interest the said R. B. Craig had in the lots as the sole legatee under his will, which was duly probated soon after his death.

"4. The lots in controversy from time immemorial, and until a few days after November 15, 1884, remained and were vacant and unoccupied when the plaintiff took possession thereof and was proceeding to inclose the same, until he was forbidden by said R. B. and Imogene Craig; in a day or two after he commenced to inclose the same, and to further proceed with the work of inclosing the same. The said R. B. Craig claimed to be the owner of the lots by virtue of a tax deed of November 14, 1884. The plaintiff thereupon, by reason of being so forbidden, stopped the work of inclosing said lots and made no further efforts to complete the same. Very soon thereafter, without the consent of the plaintiff, the said R. B. Craig took possession of said lots and inclosed the same with a substantial fence, and remained in possession thereof until his death, when he was succeeded in such possesion by Imogene Craig, who has since had the possession until now.

"5. The lots in controversy for the year 1885 were entered upon the assessment and tax-rolls in the name of R. B. Craig.

"6. This action, which is in the nature of an ejectment and for rents and profits, was commenced by the plaintiff against R. B. Craig May 7, 1887, and said

Craig filed his answer denying title to the plaintiff and admitting possession in himself.

"7. The taxes levied upon said lots for the year 1885 remained due and unpaid and delinquent, and said lots were sold for such taxes in September, 1886, to the county of Leavenworth. In November, 1887, the sale certificate was duly sold and assigned to one William Booth, on the 14th day of the month. On the 15th day of the same month said sale certificate was duly sold and assigned by Booth to Imogene Craig, by the name of Mrs. R. B. Craig, and on February 13 she obtained a tax deed thereon from the county of Leavenworth, which was regular upon its face and valid, and was recorded in the proper office on May 1, 1890.

"8. After the death of R. B. Craig, in July, 1887, this action was revived against Imogene Craig. On July 13, 1889, the plaintiff filed a supplemental petition making her a party defendant, caused a summons to be issued to her, which was duly served, and on October 9, 1890, she filed a supplemental answer, setting up her deed of February 13, 1890, mentioned in finding No. 7, and on the same day the plaintiff filed his reply thereto, denying her title to said lot under said tax deed.

"9. The valuation of the rents and profits of said lots from November, 1884, was $4 per year."

"CONCLUSIONS OF LAW.

"1. The defendant is entitled to a judgment that she is the owner of said lots and entitled to the possession of the same and the costs accruing subsequently to the filing of her supplemental answer, October 9, 1890.

"2. The plaintiff is entitled to a judgment for costs accruing down to October 9, 1890, and for rents and profits of the lots from November, 1884, to October 9, 1890."

And judgment was rendered thereon. The case made contains a statement that the plaintiff excepted to the said several conclusions of law at the time, and

filed his motion for a new trial, on the grounds : (1) That said findings of fact and conclusions of law are not sustained by sufficient evidence and are contrary to law ; (2) for error of law occurring at the trial and excepted to by plaintiff.   The motion is not preserved in the record, nor is the testimony, or any of it, but in said case made we find the following statement :

"On the trial of said cause, plaintiff, to maintain the issues on his behalf, and to prove, *aliunde* the face of defendant's said tax deed for taxes of 1885, that said deed was void, offered competent evidence tending to show that there was included in said tax deed of 1885, and for which said lots were sold, a printer's fee of 10 cents for each lot, and that the printer who published the delinquent tax-list and notice of sale did not, immediately after the last publication thereof, nor within 14 days thereafter, nor at any time, transmit to the treasurer of said Leavenworth county an affidavit of such publication made by himself or by any one. Defendant objected to said evidence because it was immaterial, inasmuch as it appeared that such list and notice, with such affidavit attached, was transmitted to the county clerk of said county direct from said printer, and within said 14 days.   It being true that the list, notice and affidavit referred to in the publication were transmitted from the printer direct to the county clerk, and were recorded by him within 14 days, as provided by law, the court sustained said objection for these reasons, and plaintiff at the time excepted.   Plaintiff further, for the same purpose, offered like evidence tending to prove that there was included in said taxes of 1885, as part thereof, a levy by said city of Leavenworth, a city of the first class, for constructing and maintaining the main trunk sewers of said city, a tax of three-fourths of a mill on the dollar valuation on all lots and pieces of ground in said city subject to taxation, exclusive of personal property, and the value of the real estate to be taken from the general assessment roll of said county, said year.   Defendant objected for same reasons as last

above, and the court sustained the objection, and plaintiff excepted.''

The above and foregoing was all the evidence offered to prove the invalidity of said tax deed for the taxes of 1885; and this is the only attempt to set out any of the testimony offered on the trial of this cause. The petition in error contains 13 assignments of error, but from the condition of this record it is impossible for us to pass upon any of them, except such as come strictly within the admissions of the case made as to the testimony offered and refused on certain points, and as to what the others are founded upon, would require an examination of the evidence adduced in the case, which, as we have said, has not been preserved.

The first assignment of error in plaintiff's brief is the rejection of competent evidence tending to show that there was included in said taxes of 1885, for which said lots were sold, a printer's fee of 10 cents for each lot, but that the printer who published the delinquent tax-list and notice of sale did not, immediately after the last publication thereof, nor within 14 days thereafter, nor at any time, transmit to the treasurer of said Leavenworth county an affidavit of such publication made by himself or by any one.

Paragraph 6957 (§ 108), General Statutes of 1889, provides:

"Every printer who shall publish such list and notice shall, immediately after the publication thereof, transmit to the treasurer of the proper county an affidavit of publication, made by such person to whom the fact of the publication shall be known; *and no printer shall be paid* for such publication who shall fail to transmit such affidavit within 14 days after the last publication,'' etc.

To determine whether or not the printer's fee is prop-

erly taxable as a charge or penalty against property, we must first ascertain whether or not the county is liable to the printer therefor. If it is not, then there is no authority or right for the collection of it, and the statutory requirement compelling the affidavit to be made within a certain time is merely for the purpose of placing in the hands of the county authorities whose duty it is to charge these up against the land proof that such publication has been made.

In other words, the official whose duty it is to enter these charges against the property cannot do so until he has learned through legal proof that they have been earned, and if he does not so learn within the time limited by statute no charge therefor can be entered on the tax-roll. But under this section there must be an absolute, total failure to make and transmit this affidavit—not a mere irregularity in the manner in which the proof is forwarded to the officer. The mere fact that it is not handed or transmitted to the county treasurer in the first instance would not invalidate the deed. If it comes into his hands by any means, through the medium of the county clerk or anybody else, within the 14 days limited, it would be sufficient. The object of it has been accomplished, and the requirement of the law fulfilled. This same section provides that

"the county treasurer shall also make, or cause to be made, an affidavit or affidavits of the printing of such list and notice as above required, all of which shall be carefully preserved by him and deposited as hereinafter specified."

Yet his failure to do so would not invalidate the deed. It is a mere irregularity. (*Stout v. Coates*, 35 Kan. 382.)

If it were shown that this affidavit had never been

received by the county treasurer until after the expiration of the 14 days, then we think the contention of the plaintiff in error would have some force. But it is admitted in this case that the affidavit was made within the time, and, instead of being transmitted to the county treasurer, was sent to the county clerk, and, for aught that is shown in this record, the clerk may have handed it to the county treasurer, and the presumption is that he did, for it will always be presumed, where an officer has performed an act required to be done by him, that it was properly done, and as the fee in this case was charged against the land by the county treasurer, it will be presumed that it was made upon legal notice, as required by statute. To hold so trifling an irregularity as this should overturn a tax deed is sacrificing substance to form, and would be totally ignoring paragraph 6993, General Statutes of 1889, which was undoubtedly enacted to cover just such cases. It reads:

"No irregularity in the assessment roll, nor omission from the same, *nor mere irregularity of any kind in any of the proceedings,* shall invalidate such proceeding *or the title conveyed by the tax deed,*" etc.

The second assignment of error is the rejection of competent evidence tending to prove that there was included in said taxes of 1885, as a part thereof, a levy by the city of Leavenworth, a city of the first class, for constructing and maintaining the main trunk sewers in said city, a tax of three-fourths of a mill on the dollar of valuation on all the lots and pieces of ground in said city subject to taxation, exclusive of personal property, and the value of the real estate to be taken from the general assessment roll of said county for said year. Just what point is intended to be raised under this second assignment of error we

are at loss to understand.    From what we quoted, it would seem to be the plaintiff's contention that the levy was illegal because it was made exclusive of personal property, but in his argument he says that this second specification of error is based upon the principle of fairness, equality and uniformity which characterizes every exercise of taxation and assessment; that it is not just, nor equal, nor uniform, to assess for the purpose of the main trunk sewer the lot of a poor man whose little house is thereon as much as that of a wealthy merchant or hotel keeper whose immense building occupies the next lot.    This would indicate his contention to be that the levy was illegal because it was made upon land without regard to improvements thereon.    We can only answer this in the language of the defendant in error:

"If such is the contention, it contains within itself that which shows the impossibility of considering it, because the first quotation discloses the fact that the valuation of the real estate was to be taken from the general assessment roll of said county for said year. The general assessment roll indicates the value of realty, including the improvements thereon."

The statute under which the city acted in levying this tax is section 19, Laws of 1891 (Gen. Stat. 1889, ¶ 563):

"The mayor and council shall have the power to provide for a system of sewerage and drainage for the city, or any part thereof, and to build and construct sewers or drains by districts or otherwise, as the mayor and council may designate.    The cost and expense of constructing the same shall be assessed against the lots or pieces of ground contained in the district in which the same is situated, and the cost of same shall be levied and collected as one tax in addition to other taxes and assessments, and shall be certified by the city clerk to the county clerk, to be placed upon the

tax-roll for collection, subject to the same penalties and collected in the same manner as other taxes, as provided by law."

In *Gilmore v. Hentig*, 33 Kan. 156, the supreme court, in passing upon this section, says :

"Where a statute authorizes a city to provide for the construction of sewers and drains, and to tax the costs thereof upon the adjacent owners, but does not prescribe any mode for the apportionment of the taxes, . . . the city in such a case would have a right to adopt any mode for the apportionment of the taxes that would be fair and legal ; and, as a general rule of apportionment, the levying of the taxes in proportion to the value of the lots taxed, without the improvements thereon, would be fair and legal."

As to the assessment being made without including personal property, the act under which it was made specifically provides that " the cost and expense of the sewers shall be assessed against the lots or pieces of ground." This certainly excludes personal property, and, as we have said, from the condition of this record we cannot intelligently pass upon the other assignments of error, as their correctness or incorrectness depends entirely upon the testimony introduced at the trial, which has not been preserved.

We fail to see any error in the record. The judgment of the lower court will therefore be affirmed.

All the Judges concurring.